## STEVENS *v.* WELLINGTON.

A power to sell a slave must be in writing. C. C. 2415, 2961, 2966.

Where an agent empowered to sell a slave on certain terms, sells him on conditions less favorable to the principal, the latter will not be bound by his act, unless subsequently ratified. C. C. 2979, 2980.

A sale of a slave, accompanied by delivery, has effect, as to third persons, from the date of its registry. Such a sale, unaccompanied by delivery, is without date as against third persons. C. C. 2417.

Where property has been placed in the hands of an agent for the purpose of being sold, and the principal is subsequently made a garnishee in an action against one of his creditors, and the facts warrant the presumption that the agent must have been aware that his principal had been made a garnishee, his authority to sell must be considered as suspended from service of notice on the garnishee.

APPEAL from the District Court of the First District, *Buchanan,* J. The judgment of the court was pronounced by

KING, J. This suit was instituted by *Stevens* for the recovery of a negro man slave, of whom the defendant is alleged to be in possession, claiming to be the owner, and for $300 for the wrongful detention. During the pendency of the action, *Stevens* was declared a bankrupt, and received his discharge. At a sale of his property made under an order of the United States District Court, *R. L. Cauthorn* purchased all the rights of *Stevens* to the slave in question, and was substituted as the party plaintiff in this suit, which he now prosecutes.

Both parties claim to derive title from *Robert Cook;* the plaintiff, by a sale from *Cook* to him, and the defendant, by a transfer from *John L. Wilson,* professing to act as the agent of *Cook,* to *Palmer,* from whom the defendant purchased. Both of the acts of sale were under private signature, and admitted to record on the same day in the office of the parish judge of Ouachita, where *Cook* resided.

*Cook,* the original vendor, and *Stevens,* his vendee, were both examined as witnesses upon the trial of the cause, and gave the following history of the transactions out of which the present controversy grows,

*Palmer & Scott,* of this city, were the judgment creditors of *Cook,* for upwards of $600. In November, 1840, *Cook* authorised *Wilson,* one of the attorneys of *Palmer & Scott,* to sell the slave in contest, who was then a runaway, to *Palmer,* or to any other person, provided he would credit the judgment of *Palmer & Scott* with $500, and pay the expenses which the slave had incurred during his absence.

Early in the spring of 1841, the slave being still absent, *Cook* contracted, verbally, to convey him, when recovered, to *Stevens,* for $500. On the 2d of April, 1841, *Cook* obtained possession of the slave, and on the nineteenth of the same month, by an act under private signature, sold him to *Stevens* for $500, the possession having been previously delivered under the verbal contract. On the same day, the act was proved and admitted to record.

*Wilson,* acting under the authority of *Cook,* which appears to have been verbal, by an act under private signature, bearing date the 24th March, 1841, sold the slave to *Palmer,* one of the judgment creditors, for $500, stated in the instrument to have been received in cash. There was no delivery of possession however. This act was also proved and admitted to record on the 19th April, 1841.

Before the sale from *Wilson* had been made, *Scott*, of the firm of *Palmer &·* *Scott*, had instituted a suit against *Palmer &· Whiting*, to which *Cook* had been made a party garnishee.

When this conflict of title arose, *Cook* proposed to *Palmer* still to cause the slave to be conveyed to him upon the terms on which *Wilson* had been autho'-rised to sell, to wit, upon a credit of $500 being allowed upon the judgment of *Palmer &· Scott*, and the payment of the expenses which the slave had occa-sioned while a runaway, and upon the further condition that he should be releas-ed from the liabilities growing out of his garnishment. This proposition *Palmer* declined.

The slave remained in possession of *Stevens* until the autumn of 1841, when he again ranaway, was taken up and lodged in the parish prison of Carroll, whence he was withdrawn by *Wilson* and *Palmer*, the latter of whom took possession of him, and subsequently sold him to the defendant.

The sum of $500, mentioned in the act of sale from *Wilson* to *Palmer* as the price of the slave, was not credited upon the judgment of *Palmer &· Scott* against *Cook*, but on the contrary, the amount of that judgment was subsequently made out of the property of *Cook*, upon a *fieri facias* against him as garnishee in the suit of *Scott* v. *Palmer &· Whiting ;* nor were the jail fees of the slave paid by *Palmer* or his attorney, but they were settled for by *Cook* himself, who paid a part in cash and for the remainder gave his note.

There are several fatal objections to the title of the defendant :

1. No written procuration from *Cook* to *Wilson* has been produced ; the only information we have in reference to the authority of the latter is derived from the testimony of *Cook*, and from this we infer that it was verbal. Such autho-rity is sufficient to enter into those contracts which may be established by parole evidence. But our laws require that all sales of slaves and immovables shall be made in writing ; and it has been held that the authority to execute such acts must be evidenced by an instrument of equal dignity. The mandate to enter into those contracts, can only be supported by written proof of the agent's au-thority. Civil Code, arts. 2415, 2961, 2966. 2 La. 596.

2d. The agent can only bind the principal while he acts within the scope of the authority committed to him, and all the acts of the mandatary which exceed his trust are null and void as regards the constituent, unless ratified. Civil Code, arts. 2979, 2980. Story on Agency, 165. In the present instance, the agent was authorised to sell upon the condition that $500 *should be credited upon a judgment, and that the expenses of the slave, while absent, should be paid.* Neither of these conditions has been performed. The sale to *Palmer* purports to be for $500 in cash, which sum has not been credited upon the judgment, and no provision has been made by the agent or creditor, for the payment of the charges created by the slave. In both these respects the agent has exceeded the express limits of his trust, his act is more onerous than that contemplated by the mandate, it has not been confirmed, and, as to the principal, is null and void.

3d. The sale from *Cook* to *Stevens* was accompanied by delivery, and conse-quently had effect against third persons from the date of its registry. There was no delivery to *Palmer*, and until such delivery the sale to him is without date against third persons. This ground is equally fatal to the pretentions of the defendant, who could acquire no better tittle than that of his vendor. Civil Code, art. 2417.

STEVENS
v.
WELLINGTON.

4th.· The agency of *Wilson* expired, or was at least suspended from the moment that notice of the garnishment was given to *Cook*, of which proceeding, as the attorney of *Palmer*, who was present at the date of the sale, he must be presumed to have been cognizant.   From that time *Cook* became the stockholder for the parties litigant in the suit of *Scott* v. *Palmer & Whiting*, and could only have paid the judgment to *Scott* at his peril; nor could *Wilson*, in the faithful discharge of the duties of his trust, have paid it for his principal.

The plaintiff has claimed damages.   Although we are satisfied that the acts of the defendants and of his vendor have been wrongful, that the possession which the former acquired of the slave was tortious, and that damage must have been sustained, the evidence upon this point is too vague and indefinite to enable us to determine its extent.

We think that the judgment of the court below is erroneous, and ought to be reversed.   It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed ; and it is further ordered that the intervenor, *Cauthorn*, recover of the defendant, the slave, *Drew*, described in his petition, that said slave be delivered to the said *Cauthorn*, and that the defendant pay the costs of both courts.   It is further ordered, that the defendant, *Wellington*, recover of his warrantor, *Palmer*, $500, the price of the slave *Drew*, and the costs of suit in both courts.

*Stockton* and *Steele*, for the appellant.   *G. B. Duncan*, for the defendant.