## LINDEMAN et al. *v.* THEOBALDS et al.

Continued possession by a vendor, acting as owner, after a sale, creates the presumption of simulation, and imposes on the vendees, as to third persons, the burden of proving the reality of the sale. C. C. 2456, 1915. The mere fact of the vendor, who was the mother of the vendees, continuing to live with her children on the place sold after the transfer, is not of itself a badge of simulation.

Where a party enjoins an execution against a third person claiming the property seized by virtue of his possession under an act of sale duly registered, and defendant prays for the dissolution of the injunction on the ground that the sale was simulated and fraudulent, he must establish the simulation, or the injunction will not be dissolved. In such an action evidence will not be admissible to prove that the sale was fraudulent; for where there has been a real, though fraudulent, sale, detrimental to creditors, the title and possession of the purchaser cannot be disregarded; the creditor can only reach the property by causing the sale to be annulled in a direct revocatory action. It is only in cases of simulated sales, not intended by the parties to convey any property, that the creditor may disregard the title of the purchaser and seize.

Where a married woman joins her husband in an action, in which they assert title in the latter to property, conveyed to her by her tutrix, in settlement for her share in the succession of her father, by an act *sous seing privé*, duly registered, but signed by the husband alone, under which the latter was in actual possession, the possession and registry will amount to notice to third persons; and the joining in the action is an approval of the acts of the husband.

Art. 2417 of the Civil Code, which provides that a sale of immovables or slaves *sous seing privé* has effect against the creditors of the parties and against third persons in general, only from the day of its registry in the office of a notary, *and* the actual delivery of the thing sold, must be considered as controlling art. 2242 which declares such sales to be valid from the dates of their registry in the office of a notary, *or* from the time of the actual delivery of the thing sold.

APPEAL from the District Court of Ouachita, *Copley,* J. *R. W. Richardson* and *Sharp,* for the plaintiffs. *Garrett,* for the appellants. The judgment of the court was pronounced by

KING, J. ·The plaintiffs have enjoined the execution of a writ of *fieri facias,* issued under a judgment obtained by the defendants against *Maria B. Ludewig.* They allege that they are the owners of the property seized by the sheriff under the writ, in virtue of a title derived from *Maria B. Ludewig,* and that the act under which they hold was duly proved and recorded, in 1844. The defendants in their answer aver that, the transfer from *Maria B. Ludewig* to the plaintiffs, who are her children, is simulative, fraudulent, and collusive, and without consideration; that it was unaccompanied by delivery of possession; and that the vendor remained in possession after the transfer and up to the date of the seizure. The injunction was perpetuated in the court below, and the defendants have appealed.

The act under which the plaintiffs claim title is under private signature, but was proved and admitted to record in the office of the parish judge on the 11th of September, 1844. The vendor declares in the act that she is the widow of *Conrad Lindeman,* the father of the plaintiffs; that she was their tutrix for many years, and as such had charge of and administered the property inherited by the latter from their father, of which no final account had been rendered, and of which no account could then be judicially rendered, in consequence of

LINDEMAN<br><i>v.</i><br>THEOBALDS.

the length of time which had elapsed since the death of her husband; that in order to satisfy the just claims of the plaintiffs, as heirs of her deceased husband, she conveyed and gave in payment to them certain property described in the act, amongst which is the tract of land seized under the writ enjoined. In consideration of the transfer the purchasers exonerate the mother from all liability or indebtedness arising from her tutorship, stating that the act is a compromise; and a "complete acquittance and release from each side to the other" is given. This act is signed by the vendor, by *Henry*, and *Benjamin Lindeman*, by *Fenner*, the husband of *Louisa M. Lindeman*, and by *Sandford*, the husband of *Catharine Lindeman*.

It appears from the evidence that, immediately after the sale, *Henry*, and *Benjamin Lindeman*, and *Sandford*, were in possession, each of distinct portions of the tract of land conveyed, cultivating, and exercising other acts of ownership over, it. Neither *Fenner*, nor his wife, is shown ever to have been in possession. The mother continued to reside on the place with her children after the conveyance, but is not shown ever to have exercised acts of ownership after the date of the transfer.

As regards the plaintiffs *Henry*, and *Benjamin Lindeman*, and *Mrs. Sandford*, we think, under this state of facts, that the case presents no serious difficulty. The act under private signature under which they claim, had effect against third persons from the date of the registry and recording, and of the delivery of possession to them, all of which had been effected prior to the date of the seizure. C. C. art. 2417. The fact that the mother continued to live on the place with her children after the transfer, is not of itself a badge of simulation. It is the continued *possession* of the vendor, acting as owner, after the sale, which creates the presumption of simulation, and imposes on the vendees, as regards third persons, the burthen of proving the reality of the sales. Civil Code, arts. 2456, 1915. *Thibodeaux* v. *Thomasson*, 17 La. 360. No such possession on the part of the vendor has been shown; but, on the contrary, the three plaintiffs whose claims we are now considering, appear to have been in the actual possession each of a distinct portion of the land conveyed to them, prior to, and at the date of, the seizure. Having failed to establish the continued possession of the vendor after this registered and recorded sale, it was indispensable to the success of the defence set up in this action by the defendants, to prove their averment of simulation by other evidence; for when there has been a real, although fraudulent, sale, operating to the detriment of creditors, the title and possession of the purchaser can not be disregarded. The creditor in such cases can only reach the property conveyed, by causing the sale to be annulled in a direct revocatory action. It is well settled that the title in such cases can not be attacked directly, commencing with a seizure. It is only in cases of simulated sales. which are really intended by the parties to the apparent contract to convey no property, that the judgment creditor may disregard the title of the purchaser and seize. *Cammack* v. *Watson*, 1 An. 132. *Wright* v. *Chambliss*, 1 An. Rep. 262. *Hobgood* v. *Brown*, ante 323. *Nimmo* v. *Allen*, ante 451.

The defendants offered a witness on the trial to prove that the slaves conveyed by the act of sale were worth $15,000, and that the estate of *Conrad Lindeman* was insolvent at his death. This evidence was objected to, on the ground that the act could not be impeached for fraud in this action. The objection was sustained, and the defendants excepted to the opinion of the court. The judge

LINDEMAN
*v.*
THEOBALDS.

did not, in our opinion, err. The facts proposed to be proved by the witness would not have established that the sale was simulated, but that it was fraudulent, and, under the view we have taken of the case, such proof would only have been admissible in a direct action to annul the sale on the ground of fraud.

But it is contended, as regards *Mrs. Sandford*, that she neither signed the act, nor authorised her husband to sign it. It is true that no express authority from herself to her husband has been shown. But the latter was in actual possession under the sale, exercising ownership over a part of the land seized. This possession, with a duly recorded title, was a notice to third persons, and the wife has affirmed the acts of her husband by participating in this action.

In relation to *Mrs. Fenner*, a different question is presented. She claims under an act under private signature, which not only has not been signed by her, but under which neither she, nor her husband for her, has ever held possession. Both the registry of the act, and delivery of possession of the thing sold, were indispensable to give effect to the sale against third persons.

There is an apparent conflict between the articles 2242 and 2417 of the Code. The former provides that "sales or exchanges of real property or slaves by instruments made under private signature, are valid against *bonâ fide* purchasers and creditors, only from the day on which they are registered in the office of a notary, or from the time of the actual delivery of the thing sold or exchanged." The latter declares that the sale of any immovable or slaves made under private signature, shall have effect against the *creditors* of the parties, and against *third persons in general*, only from the day such sale was registered in the office of a notary *and the actual delivery* of the thing sold took place. The former article, which gives effect to sales under private signature against *bonâ fide* purchasers and creditors from the date of registry or delivery, and which occurs under the head of conventional obligations, must yield to the latter, which requires both *registry and delivery*, and which is found among the rules specially provided for the government of the contract of sale. C. C. 2413.

But it is contended that the contract under which the plaintiffs claim is a compromise, and must be good as a whole, otherwise it fails entirely; that the assent of all the parties to it was indispensable, to give it validity and binding effect between the parties themselves; and that the assent of *Mrs. Fenner* not having been shown, the act is incomplete even as to those who executed it. This question is one not perhaps free from difficulty, upon which we do not think it necessary to express an opinion.

It appearing on the face of the instrument that a part of the vendees had signed the deed, and it being shown that possession passed to them, and that the deed has been recorded, we think, as to those who so became parties, the creditors ought to resort to their revocatory action.

We conclude that, as to the plaintiffs who were in possession at the date of the seizure and were parties to the deed, the injunction was properly sustained; but that as to the interest claimed by *Mrs. Fenner*, the seizure was proper, and the injunction ought to have been dissolved.

It is therefore ordered that the judgment of the District Court be reversed, so far as relates to the plaintiff *Louisa M. Lindeman*, and that, as to the undivided interest of one-fourth in the land seized claimed by her, the defendants be permitted to proceed with the execution of their writ of *fieri facias*. It is further ordered that said judgment be affirmed, so far as concerns the plaintiffs *Henry Lindeman, Benjamin Lindeman,* and *Catharine Lindeman,* wife of *Sandford,*

without prejudice to the rights of the defendants, if any they have, to proceed against those parties in a direct action; the plaintiff, *Louisa M. Lindeman*, paying the costs of this appeal and one-fourth of the costs below, and the defendants the remaining three-fourths of the costs of the lower courts.