(65 South. 900)

No. 19,733.

McQUEEN et al. v. FLASDICK–BLACK LAND & LUMBER CO., Limited.

(May 25, 1914. Rehearing Denied June 29, 1914.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS (§ 114*) — PATENT — PRESUMPTION.

Where the recital, or preamble, in a patent, which precedes the grant, describes the applicant as the "legal representative" of the named entrymen, but the grant itself is made to the applicant "and to his heirs and assigns," the matter is open to inquiry as to whether the applicant represents the entryman, in the sense of acting for him, or, in the sense of standing in his place, as transferee of his rights: but, the presumption in such case is that the register properly discharged his duty, and, before issuing the patent in the form stated, satisfied himself that the applicant represented the entrymen in the sense that he was the transferee of his rights, and that presumption holds good, unless, upon inquiry, it is destroyed by proof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314–322; Dec. Dig. § 114.*]

2. PUBLIC LANDS (§ 114*)—VENDOR AND PUR-
CHASER (§ 231*)—REGISTRATION OF LAND
TITLES—NECESSITY—BONA FIDE PURCHAS-
ERS.

Land titles emanating from the sovereign
are not required to be recorded elsewhere than
in the land offices, specially provided for that
purpose; but a title by act under private signa-
ture, from an individual to a corporation, is
without effect, as to third persons, not only
until recorded in the conveyance office of the
parish in which the land is situated, but until
the land has been actually delivered to the
grantee.

[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 314–322; Dec. Dig. § 114;* Ven-
dor and Purchaser, Cent. Dig. §§ 43, 55, 487,
513–539; Dec. Dig. § 231.*]

Appeal from Twenty-Fifth Judicial Dis-
trict Court, Parish of Tangipahoa; Robert S.
Ellis, Judge.

Action by Mrs. M. W. McQueen and others
against the Flasdick-Black Land & Lumber
Company, Limited. From judgment for de-
fendant, plaintiffs appeal. Reversed and
rendered.

See, also, 126 La. 601, 52 South. 781; 130
La. 1076, 58 South. 886.

W. S. Rownd, of Springville, and Clay El-
liott, of Amite City, for appellants. Purser
& Magruder, of Amite City, for appellee.

### Statement of the Case.

MONROE, C. J. This case is before us for
the third time. The suit was instituted by
Mrs. Marion Wallace McQueen, as universal
legatee of George Colmer, joined by Mrs.
Josephine H. Davidson, alleging a certain
interest; and Mrs. Augusta McQueen, wife
of E. T. Cullom, daughter and sole heir of
Mrs. M. W. McQueen, was thereafter substi-
tuted in place of her mother. There were,
originally, quite a number of persons named
as defendants, and plaintiffs prayed for judg-
ment "recognizing your petitioner, Marion
Wallace McQueen, as the owner and posses-
sor of the tract of land above described, un-
der George Colmer, * * * decreeing"
the titles under which defendants are alleged
to claim to be void and ordering their can-
cellation from the records.

Defendants excepted, on the ground that
plaintiffs were attempting to cumulate a
petitory action with an action of jactitation,
and prayed that they be ordered to elect;
and on the further ground that there was a
misjoinder of defendants. The district court
held that the action was petitory, and there
was no appeal from that judgment. It also
held that there was a misjoinder of defend-
ants, and dismissed the suit as to all of them
save the Flasdick-Black Land & Lumber
Company, Limited, and from that judgment
plaintiffs appealed.

In this court it was said:

"Since the trial judge has held that the ac-
tion is petitory, and no one complains of his
judgment, we are constrained to deal with the
question from that point of view. The defend-
ants do not, however, complain of the judgment
from which the appeal was taken, and the
plaintiffs complain of it only in so far as it dis-
misses the suit against the others, but do not
complain of its holding the Flasdick-Black
Land, etc., Company as a defendant. As mat-
ters stand, therefore, the ruling, brought up by
the appeal, of which plaintiffs complain, must
be sustained, since the ruling of the trial judge,
that the action is petitory, is not before us for
review, and the defendants, as to whom the suit
has been dismissed, are not alleged to be in ac-
tual possession. The same thing is true of the
Flasdick-Black Land, etc., Company, but no
one is asking that the judgment appealed from
be reversed or amended, so far as that company
is concerned."

And the judgment appealed from was ac-
cordingly affirmed. McQueen v. Flasdick-
Black, etc., Co., 126 La. 601, 52 South. 781.

The case then went back to the district
court, where the Flasdick-Black, etc., Com-
pany filed its answer, setting up title, as hav-
ing been acquired from the Flasdick-Rixman
Lumber Company, and, through mesne con-
veyances, from Denis Lary and John Cottar,
the original entrymen; and there was a
trial upon the merits, resulting in a judg-
ment for defendant, from which plaintiffs
again appealed. Upon the second hearing in
this court, it was found that the terms of

the patent relied on by plaintiffs were so ambiguous as that, without further evidence, the instrument could not be adopted as the basis of a judgment; and, as the court also found that defendant had failed to establish the title set up by it, there was, at first, a judgment of nonsuit, which at the instance of plaintiffs, on application for rehearing, was changed into a judgment remanding the case, in order that it might be tried de novo. McQueen v. Flasdick-Black Land & Lumber Co., 130 La. 1076, 58 South. 886.

After the trial, as thus directed, the district court gave judgment for defendant, rejecting plaintiffs' demands and decreeing defendant to be the owner, in possession, of the land in dispute, and, plaintiffs having again appealed, the case has been argued and submitted in this court upon the evidence contained in all the transcripts, subject to such objections as may have been reserved.

Plaintiff Mrs. McQueen claimed title under the last will of George Colmer, in which she was named universal legatee and which was admitted to probate in 1878. The will contains this paragraph, following the bequest to Mrs. McQueen, which accounts for the appearance in the case of Mrs. Josephine H. Davidson, to wit:

"Whatever may remain of my property, after fully repaying herself, both as regards debts and interest, I wish her, the said Mrs. Marion W. Kille, alias the widow McQueen, to divide as equally as she well can (but still arbitrarily and according to her own judgment and her own interest) between her sister, Josephine, and herself; and, in the case of the death of Josephine, between herself and Josephine's legal representatives."

It is asserted that George Colmer acquired title to the land here in controversy by virtue of a patent issued by the state of Louisiana, of date March 24, 1875, and reading, in part, as follows:

"Whereas, George Colmer, * * * as legal representative of Denis Lary and John Cottar, who purchased, per certificates Nos. 5451 and 5452, dated at Greensburg July 31, 1862, the following land, to wit: The east ½ of section No. 18, in township No. 4 south, of range No. 7, east: * * * Now, know ye, that the state of Louisiana * * * has given, granted and sold, and, by these presents, does give, grant and sell unto the said George Colmer, and to his heirs, the above-described land, to have and to hold the same, together with all the rights, titles and privileges thereunto belonging, unto the said George Colmer and to his heirs and assigns forever."

The receipts of the receiver, and the certificates of the register, of the Land Office at Greensburg, which are in evidence, together with the abstract from the books of the office, show that, on July 31, 1862, the N. ½ of the section 18 in question was sold to Denis Lary, and the S. ½ to John Cottar, but neither of the exhibits shows any assignment by the entryman, and it is not clear whether they were surrendered, in March, 1875, upon the issuance of the patent to Colmer, or in September, 1881, when other patents (to which we shall refer) were issued, in the name of William A. Chambers, to Martin Haney.

Plaintiffs offered in evidence an instrument purporting to be an act of sale under private signature, of date March 7, 1863, from "Simantha" (or Samitha) Manning to George Colmer, of the E. ½ of the section in question, and thereupon counsel for defendant made the objection:

"To the offering of the Simantha Manning deed, which, additional writings, on the reverse side of the deed show to be in a different handwriting, not signed, and add to an attempt to take out the transfers shown on the face of the deed."

Counsel for plaintiffs then stated that the additional writings referred to in the objections were not offered, and, the court having so ruled, there appears to have been no further objection to the deed.

Plaintiff also offered two patents, Nos. 4222 and 4223, issued September 13, 1881, the one of which declares that:

"Whereas Wm: A. Chambers, assnee of Denis lary, * * * purchased, per Greensburg receipt No. 5451, July 31, 1862, N. W. ¼ of section No. 18: * * * Now know ye, that

the state of Louisiana * * * has given, granted and sold * * * unto said William A. Chambers, and to his heirs, the above-described land. * * * "

The other patent describes Chambers as "assnée," and recites the purchase by him, per receipt 5452 of the S. W. ¼ of said section 18. The introduction of the instruments in evidence was objected to, upon the ground that they are irrelevant.

Defendant, in support of the title set up by it to the E. ½ of said section (being the portion in dispute), exhibits a notarial act of conveyance thereof, of date December 3, 1906, from Flasdick-Rixman Lumber Company; a similar act, of date October 30, 1905, from Martin Haney to Flasdick-Rixman Lumber Company; a similar act, of date August 6, 1881, from William A. Chambers (who appears to have acted in his own interest, as an heir of William A. Chambers, his deceased father, and as the attorney in fact of the widow and other heirs of said deceased) to Martin Haney; and two instruments, purporting to be acts of sale under private signature, dated November 10 and 19, 1862, and recorded May 3, 1881, from Denis Lary and John Cottar, conveying the N. ½ and the S. ½, respectively, of said section 18, to William A. Chambers, which offer was objected to, on grounds that will be hereafter stated.

We find testimony in the record to the effect that, shortly after the passage of a cyclone, in 1908, defendant sent men upon the land in question who cut and hauled away some of the fallen timber, and William A. Chambers, Jr., called as a witness for defendant, testified that at some time subsequent to 1868, when his father died, he employed men who cut a few car loads of cordwood, but he was unable to fix either the date or the place of the cutting. Thus, he was asked:

"Any of you picked out certain places; you don't know if the cordwood was cut on section 17 or section 18?"

To which he replied:

"No; it may have been on either one of them."

## Opinion.

[1, 2] It was admitted that plaintiffs have paid no taxes on the land in dispute, and, though defendant offered the rolls, as showing the assessment of the land to, and payment of taxes by, it, we find nothing in the transcripts on that subject save the offers. We may say, too, that though defendant's counsel argue the case upon the theory that there is evidence in the record showing that the acts under private signature from Lary and Cottar to Chambers were found among the papers of Martin Haney, after his death, and are therefore entitled to the consideration accorded, under certain circumstances, to ancient documents, we find no such evidence in the record. In fact, the transcript last brought up, fails to disclose that the instruments were offered on the last trial (which was de novo), and the preceding transcript shows that, when offered—not in the originals, but as recorded in the conveyance office—they were objected to, on the grounds: that the signatures had not been proved; that Lary and Cottar had already conveyed their interests in the E. ½ of section 18 to Colmer; and that they (the instruments) had not been recorded until after the issuance of the patent to Colmer, which objection was referred to the merits. Counsel for plaintiffs, however, say in their brief:

"The defendant paid taxes on a tract containing over 1,200 acres, and the E. ½ of section 18 was covered in the area assessed, for a number of years, but that was unknown to the plaintiffs, and the neglect of the assessor—his oversight—and the payment of taxes by defendant does not commence an actual possession. (Citing) [Searles v. Costello] 12 La. Ann. 203; [Howell v. Land Co.] 127 La. 400 [53 South. 664]; [Ramos Lumber Co. v. Labarre] 116 La. 580 [40 South. 898]; [Frederick v. Goodbee] 120 La. 783 [45 South. 606]; Chamberlain v. Abadie] 48 La. Ann. 587 [19 South. 574]; Lacroix v. Crane, 133 La. 227 [62 South. 657]. The plaintiffs challenge, in their petition, the execution of the private acts, adduced by defendants as evidence of title from Denis Lary

and John Cottar to Wm. A. Chambers. The defendant has had two opportunities to prove the execution of the same, but it made no effort at proof. Mr. Chambers was not asked about the execution of those acts. When defendant offered in evidence the registries of the acts, the plaintiff objected, on the ground that the execution of the originals had not been proved. The district court, erroneously, overruled the objection and admitted the registries without the proof required. The plaintiffs urge their objection and pray that the same be sustained and the registries excluded. What the defendant sets up as the originals were then produced and offered in evidence, but without proof of execution. He who claims the execution of an obligation must prove it. C. C. art. 2232 (2229). The registry of an act under private signature does not make proof of its execution by the parties to it. Succession of Grant, 14 La. Ann. 795; Fairthorn v. Davis, 28 La. Ann. 725; Stallcup v. Pyron, 33 La. Ann. 1249."

We shall therefore assume that, though the evidence may not be in the record, defendant has been paying taxes, as admitted by plaintiffs, and that, though we are unable to find the offer of the acts under private signature, such an offer was made. Whether we should be authorized, under the circumstances, to assume that the acts so offered were ancient documents and were found among the papers of Martin Haney, deceased, is a different question, which we do not consider it necessary to decide. Upon the last hearing of the case, it was said by this court:

"The language used by the register in the patent just referred to (meaning the patent 2026, to George Colmer) is so ambiguous that we cannot come to a conclusion as to what he meant by the words 'as legal representative of Denis Lary and John Cottar.' * * * We do not know whether he (Colmer) acted as their executor, or receiver, or transferee, or agent, or in any specific representative capacity."

And the case was remanded, to be tried de novo, in order to obtain further light upon the meaning of the language to which the court refers, and, also, that the defendant should have further opportunity to deraign its title.

In Hogan v. Page, 2 Wall. (69 U. S.) 605, 17 L. Ed. 854, it was said:

"A difficulty had occurred at the land office, at an early day, in respect to the form of patent certificates and of patents, arising out of applications to have them issued in the name of the assignee, or present claimant, thereby imposing upon the office the burden of inquiring into the derivative title presented by the applicant. * * * The result seems to have been, after consulting the Attorney General, that the Commissioner of the Land Office recommended a formula that has since been very generally observed, namely, the issuing of the patent certificate, and even the patent, to the original grantee or his legal representatives, and the same has been adopted by the several boards of commissioners. This formula, 'or his legal representatives,' embraces representatives of the original grantee in the land, by contract, such as assignees or grantees, as well as by operation of law, and leaves the question open to inquiry, in a court of justice, as to the party to whom the certificate, patent, or confirmation should inure."

In Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 999, Mr. Justice Field, as the organ of the court, in considering the term "legal representatives," as used in an endowment policy of life insurance, said:

"The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law. It may, in this case, include assigns as well as executors and administrators."

Considering, then, that whilst, in the language which precedes the grant, in the patent No. 2026, George Colmer is described as the "legal representative of Denis Lary and John Cottar," the language of the grant itself is:

"That the state of Louisiana * * * has given, granted and sold * * * unto the said George Colmer, and to his heirs, the above-described land. To have and to hold * * * unto the said George Colmer and to his heirs and assigns forever."

And we arrive at the presumption that the register, as a public officer, properly discharged his duty in the premises; that is to say, that, before issuing the patent to "George Colmer and to his heirs and assigns forever," he satisfied himself that George Colmer was the representative of Lary and Cottar, not in the sense that he was acting

for them, or in their interest, but in the sense that he stood in their places with respect to, and as the assign of, the E. ½ of the section 18, of which they had been the owners.

"With regard to the conduct of a public office," says the Supreme Court of the United States, "the presumption is that everything is done properly and according to the ordinary course of business, or, as expressed in the maxim, 'Omnia præsumuntur rite esse acta.'" Schell v. Fauché, 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1041.

Every public officer is presumed to act in obedience to his duty, until the contrary is shown. When a statute vests in an officer a discretion, with respect to the determination of facts upon which to predicate his action, he is thereby made the exclusive judge as to such facts. Wilks v. Dinsman, 7 How. 131, 12 L. Ed. 618; Muser v. Magone, 155 U. S. 251, 15 Sup. Ct. 77, 39 L. Ed. 135.

The acts of public officers, which presuppose other acts to make them legal, afford presumptive evidence of such other acts. Ross v. Reed, 1 Wheat. 486, 4 L. Ed. 141; U. S. v. Crusell, 14 Wall. 1, 20 L. Ed. 821; Cornett v. Williams, 20 Wall. 250, 22 L. Ed. 254; Town of Weyauwega v. Ayling, 99 U. S. 119, 25 L. Ed. 470; King v. Mullins, 171 U. S. 434, 18 Sup. Ct. 925, 43 L. Ed. 214; Hen. Dig. vol. 2, pp. 489, 490. The presumptions to which we have thus referred are strengthened, for the purposes of this case, by the circumstances disclosed upon the trial. The alleged private acts from Lary and Cottar to Chambers, though purporting to have been executed in November, 1862, were not recorded until May, 1881. The notarial act, from Chambers to Haney, purporting to convey the whole of section 18, was executed on August 6, 1881; and yet, in September, following, Haney applied for and obtained patents, not to the whole section, but, to the N. W. ¼, in one patent, and the S. W. ¼, in another, and he asserted no claim whatever (so far as we are informed) to any part of the E. ½ of the section, to which he must, then, have ascertained that the patent to Colmer, which had been issued in March, 1875, was outstanding. Fifteen years later, in October, 1905, Haney executed an act purporting to convey, not the W. ½ of section 18, for which he had obtained patents, but the E. ½, for which he had obtained no patent, together with other lands, to Flasdick-Rixman Company, and, if that company did not inform itself of the condition of the title that it thus acquired, but was content with such a muniment as an act under private signature, which had been allowed to remain unrecorded from November, 1862, until May, 1881, and the vendee in which, for aught that appears, had never taken possession of, or seen, the property which it purported to convey, it was exceedingly imprudent, and has no one to blame but itself. It is true that the patent, issued to Colmer in 1875, had not been recorded in the conveyance office, but it has been held, uniformly, that titles emanating from the sovereign are not required to be so recorded. Kittridge v. Breaud, 2 Rob. 40; Tear v. Williams, 2 La. Ann. 868; St. Paul v. Louisiana Cypress Co., 116 La. 594, 40 South. 906. With regard to the title acquired by defendant, however, the case was different. Passing, as it did, from a private person to a private corporation, it was entirely without effect, as to third persons, not only so long as the act of conveyance remained unrecorded in the conveyance office of the parish where the land affected by it was situated, but (it being an act under private signature) so long as the land was not actually delivered to the vendee. C. C. 2442; Stevens v. Wellingston, 1 La. Ann. 72; Stockton v. Briscoe, 1 La. Ann. 249; Lindeman v. Theobalds, 2 La. Ann. 912; Dyke v. Dyer, 14 La. Ann. 701; McDuffie v. Walker, 125 La. 152, 51 South. 100. It is admitted that the conveyance records of the parish of Livingston were destroyed by fire, with the courthouse, in October, 1875, and the record of

any sale which Lary and Cottar may have made, prior to that time, of the E. ½ of section 18, would have been included in the destruction. The fire had not, however, taken place in March, 1875, when the patent was issued to Colmer, and the unrecorded private acts, from Lary and Cottar to Chambers, were, at that time, entirely without effect as to any third person. The issuance of the patent was therefore (after the original transaction whereby Lary and Cottar acquired the land by paying the price) the first public record that was made of the conveyance of title by the state; and that record was made 39 years ago. About 6 years after it had been made, Martin Haney, who is said to have succeeded, through Chambers, to the titles acquired by the two entrymen to the N. ½ and the S. ½ respectively, of the section 18, applied for patents, and, as we have stated, received, and accepted without complaint, so far as we are informed, patents not to the N. ½ and to the S. ½, but to the N. W. ¼ and to the S. W. ¼, thereby, apparently, acquiescing in the disposition which had been made of the E. ½ of the section. Twenty-four years later still, with the records of the land office open to its inspection, the Flasdick-Rixman Company, a concern whose business it was, in part, to deal in land titles, was content to accept from Haney such title as he appeared to have acquired (by the unauthenticated acts under private signature), to said E. ½, though there has been no effort to show that he ever saw, much less took possession of, it, and the testimony offered to show that his apparent author ever took possession utterly fails of its purpose. We conclude that the result of the inquiry into the matter is to confirm and sustain, instead of destroying, the presumption that the action of the register, in issuing the patent to Colmer, was authorized by facts then brought to his knowledge, but which, after a lapse of nearly 40 years, those who claim under the patentee are unable, and cannot be expected, to fully explain.

It is therefore ordered that the judgment appealed from be set aside and that there now be judgment in favor of the substituted plaintiff, Mrs. Augusta McQueen, wife of E. T. Cullom, and against the defendant, Flasdick-Black Land & Lumber Company, Limited, decreeing said plaintiff to be the owner, entitled to possession, of the land herein claimed by her, decreeing the title set up by said defendant to be void, and ordering its cancellation from the books of the conveyance office, and condemning said defendant to pay all the costs of this suit.

O'NIELL, J., takes no part.