MONROE, J.
This is a petitory action, the object of which is to have plaintiff decreed the owner of, and to compel defendant to remove its track from, a strip of land which crosses certain tracts belonging to the plaintiff; the facts bearing upon the issue presented by the pleadings being as follows, to wit:
On April 18, 1906, T. E. Jarrett entered into a contract with defendant, which recites that he had purchased gravel lands in the N. E. % of N. E. % of section 1, township 17 N., range 10, and S. E. % of S. E. % of fractional section 36, township 18 N., range 10, in Webster parish; and that he desired defendant to construct a branch road, in a southerly direction, connecting said gravel land with its main line, at Sibley, a distance of about four miles; and whereby he agreed to procure a right of way, 50 feet wide, for said branch road, and, within four years, make defendant a complete title thereto. He also agreed to grade the right of way, construct thereon the necessary trestles and waterways, and the necessary tracks, in the gravel pit. Defendant, on the other hand, agreed to furnish the rails, spikes, fastenings and ties necessary to lay the road from Sibley “to the gravel pit tracks to be constructed by said Jarrett,” and to construct such side tracks as might be needed for the delivery and receipt to and from’ the gravel pit of empty and loaded cars; and, after other stipulations, which need not be particularly set forth, the contract concludes with the following:
“In the event of the exhaustion of said gravel lands, or, if for any other reason, said branch railway shall no longer be needed and operation thereof shall cease and determine, said railway company shall have the right to remove therefrom the rails, spikes,” etc.
A portion of the land known as the “Miller land,” lying between the gravel land and Sibley, was, at that time, owned by the Shreveport Realty Trust Company, Limited, and was subject to a mortgage in favor of T. F. Bell; and on April 23, 1906, the owner and the mortgagee addressed a letter to Jarrett reading, in part, as follows:
“You are hereby authorized and granted privilege to use a railroad right of way, for a period of twenty years from this date, through our property known as the Miller land-
The branch road was, accordingly, constructed, partly through the “Miller land,” during the year 1906; Jarrett’s obligation to obtain for defendant a complete title to such right of way having been left, for the time, in abeyance. On January 19, 1907, Jarrett and E. R. Bernstein entered into a contract with defendant, which, after reciting the fact and the purpose of the agreement between Jarrett and defendant, reads, in part, as follows:
“And, whereas, said gravel pits belong to the said T. E. Jarrett, and E. R. Bernstein, instead of the said T. E. Jarrett, as set forth in said agreement; and whereas, the said E. R. Bernstein and T. E. Jarrett desire to lease from the said railway company certain steel rails for the purpose of laying tracks in the said gravel pit: Now, therefore, the said T. E. Jarrett, for valuable consideration, has transferred all of his rights and interest under said agreement with the * * * company to the said B. R. Bernstein and T. E. Jarrett (a' partnership, it appears), * *. * who,. hereby, accept same and bind and obligate-themselves, towards the said railway company, to take the place of the said T. E. Jarrett in *1099 said agreement and to assume all his obligations toward the said railway company, therein set forth” — and then follow the stipulations concerning the lease of the steel rails.
It may be here remarked, that the contract between Jarrett and defendant and the contract last mentioned were duly recorded, but the letter from the Realty Trust Company and T. F. Bell to Jarrett was not so recorded. On August 3, 1907, the “Miller land” was sold, under foreclosure of mortgage, and adjudicated to the mortgagee, T. F. Bell, who, on August 15th following, sold it, for $7,200 cash, to E. R. Bernstein and his two brothers, Michel and Julius who, on June 7, 1910, for a recited consideration of $30,000 cash (of which $7,-5,00 is said to have been the consideration for the sale of the personal property, engines, boilers, derricks, steam shovels, etc., and the balance, of $22,500, to have been the consideration for the sale of the land), sold the property to F. I-I. Drake. On June 22d thereafter, E. R. Bernstein and Drake organized the plaintiff corporation, with a nominal capital of $100,000, and with authority to commence business whenever $30,-000 of such capital should have been subscribed; each of the parties mentioned subscribing for 150 shares of the stock (of the par value of $100), and W. B. Lee subscribing for 5 shares. And on July 22d Drake, for a recited consideration of $1,334 cash, conveyed to the company so created the “N. E. % of the N. E. % of section 1, township 17, range 10, and the S. E. % of the S. E. % of fractional section 30, township 18, range 10,” which is part of the “Miller land,” and is the same land that is described in the original contract between Jarrett and the defendant. Soon after matters had been arranged in that way, plaintiff brought this suit, and it here asserts the right to compel the defendant to remove the branch road from the land so acquired, on the grounds: (1) That, when Drake, and when it (plaintiff), acquired said land, there was no incumbrance of the title upon the public records; and (2) that said road was not- constructed for public use, but merely to sub-serve private interests; and hence that the matter does not come within the doctrine of those cases in which it has been held that, where a railway company, being a public service corporation, has been allowed to build its road over private property, the owner cannot compel it to remove such road, but must seek another remedy.
[1] The ground first stated appears to us to be well taken, for, though we are satisfied that Drake and the plaintiff were fully informed as to all that had been done, before either of them acquired the land in dispute, there was no title or incumbrance, adverse to the title acquired by them and which identified said property, on the public records, and this court has repeatedly held that purchasers of immovable property, save in cases of fraud, and certain others, exceptional in character, are affected only by adverse titles and incumbrances which are spread upon the public records. McDuffie v. Walker, 125 La. 152, 51 South. 100; John T. Moore P. Co. v. Morgan’s La. & T. R. & S. S. Co., 126 La. 866, 53 South. 22; Riggs Cypress Co. v. Albert Hanson Lumber Co., 127 La. 455, 53 South. 700; Riggs v. Eicholz, 127 La. 750, 53 South. 977; Sorrel v. Hardy, 127 La. 847, 54 South. 122; Washington v. Filer, 127 La. 871, 54 South. 128.
It is true that defendant has produced a plat which shows the gravel spur running through the “Miller land,” and which is said to have been registered in the conveyance office; but it bears no certificate to that effect and does not appear to have been identified with any conveyance, mortgage, or other contract, and it therefore proves nothing.
[2] The other ground - relied on by plaintiff is not well taken. The case of a rail *1101 way company which, with the consent or acquiescence of the owner, has built its road upon his land, is of the exceptional character to which we have just above referred, and it is now well settled that, in such case, though the consent or acquiescence be not spread upon the public records, neither the owner of the land nor those who claim under him can recover such land, free of the servitude so acquired by the railway company, or interfere with such company in its operation of the road so built; the remedy being an action for the value of the land used and for damages, for injury to the adjacent land. MeCutchen v. Texas & P. Ry. Co., 118 La. 436 (and authorities there cited pp. 438, 439), 43 South. 42; Taylor v. N. O. Terminal Co., 126 La. 420, 52 South. 562, 139 Am. St. Rep. 537; John T. Moore P. Co. v. Morgan’s La. & Tex. R. & S. Co., 126 La. 872, 53 South. 22.
[3] The decisions in the cases thus cited are predicated, in part, upon the idea that, where a railway company, having the power of eminent domain, is already in possession of property which it may expropriate, if dispossessed, it would be a vain thing to eject it; to which is added the further consideration that the owner, by consenting to, or acquiescing in, the construction of the road, and its operation for, perhaps, a series of years, has created a situation affecting the rights of the railway company, of the public at large, and of particular individuals, which he ought not to be allowed, altogether, to ignore. In the instant ease, counsel for plaintiff say that the branch road, or spur track, here in question, was not constructed for the use and benefit of the public, but solely for the private use and advantage of the railway company, and of the owners .of the gravel pit; from which, they argue, that as the company could have no power to expropriate the right of way for such purposes, the reason for not ejecting it therefrom no longer exists. Counsel’s premise is not, however, sustained by the fact. The branch road was constructed by defendant in the exercise of its franchise as a public service corporation and is subject to the same conditions as affect its main, intrastate, and interstate lines, and it does not lose its character as a public service road merely because the primary object in its construction, and its principal use at present was and is to supply the public with the product of a particular industry. Mr. Hearn, defendant’s superintendent, testifies, in effect, that the branch road was built to get the hauling of the gravel and such other commodities as might be offered, and for the purpose of building up a traffic, and from his testimony, and that of others— wholly uncontradicted — it appears that its use is open to the public, and that whatever business it does is subject to the same control, by the State and Interstate Railroad Commissions, as is the business done upon other parts of defendant’s lines. It also appears that several thousands of car loads of gravel have been hauled over the road since 1906, and that there are'many persons and corporations who are interested in obtaining it for paving, building, ballasting, and other purposes for which such material may be used; a large proportion of that which has been carried having been consigned to another railroad company,' at Shreveport, and probably by it used in ballasting its own roadbed, or transported to, and distributed among, towns, villages, and contractors in other parts of the state or country, where gravel is needed and is not otherwise obtainable. The decision in the case of Pere Marquette R. Co. v. United States Gypsum Co. et al., 154 Mich. 290, 117 N. W. 733, 22 L. R. A. (N. S.) 181, is inapplicable here, since the court there found as a fact that the right of way sought to be expropriated was for a branch railroad intended for the use of a *1103 private enterprise; one of the paragraphs of the syllabus reading as follows:
“A side track of a railroad cannot be regarded as for public use, where it reaches a private factory and the railroad company has contracted for its use only when it can use it without interfering with the business of the manufacturer.”
In the exhaustive note to the case thus cited, the author says:
“Two general principles applicable to the subject under annotation are laid down by the courts with practically no dispute. (1) That the construction of a branch' siding, or spur, solely and exclusively for the benefit and accommodation of the railway company and of the owner of a private business enterprise, does not constitute a public purpose which will sustain the exercise of the power of eminent domain. Ulmer v. Lime Rock Co., 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387. (2) That the mere fact that the primary purpose of a branch siding, or spur, is to accommodate a particular private enterprise, is not a controlling test. The character of the use, whether public or private, is determined by the extent of the right of the public to such use, and not by the extent to which that right is, or may be, exercised. Id.”
In a comparatively recent case, involving the exercise of the power of eminent domain for the purposes of a spur track, this court quoted, with approval, the following from an opinion by the Supreme Court of Wisconsin:
“A brief reference to the leading authorities will amply show, that a spur track may run to a single factory does not militate against the devotion of the property thereto being a public use thereof, so long as the purpose of maintaining the track is to serve all persons who may desire it and all can demand, as a right, to be served, without discrimination.” Kansas City S. & G. R. Co. v. La. W. R. Co., 116 La. 185, 40 South. 627, 5 L. R. A. (N. S.) 512.
See, also, In re Chicago & N. W. R. Co., 112 Wis. 1, 87 N. W. 849, 56 L. R. A. 240, 88 Am. St. Rep. 918.
The judgment of the district court decrees the title to the strip of land in question to be in plaintiff; “that the injunction herein sued out * * * be maintained and perpetuated; and that the Vicksburg, Shreveport & Pacific Railway Company be ordered, within 20 days, to remove their spur track off of said strip of land, described in the petition, upon which it is now laid, so as to leave the land unobstructed and pay all the costs of this suit.”
We have not been able to find any petition or order for, or any writ of, injunction in the record, and, for the reasons stated, are of opinion that there is error in the judgment referred to, in so far as it purports to enjoin the defendant from continuing to use its spur track and orders the removal of the same. It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, in so far as it orders defendant to remove the spur track off the strip of land described in the petition or otherwise interferes with defendant in the use of said strip, for the purposes of said spur track. It is further decreed that, in other respects, said judgment be affirmed, and that plaintiff pay the costs of the appeal.