(70 South. 813)

No. 20148.

MOUTON v. SOUTHERN SAW MILL CO.

(Oct. 18, 1915.   On Rehearing, Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ☞233—SALES—
UNRECORDED CONTRACTS—VALIDITY—OPER-
ATION OF STATUTE.

The law which declares that all contracts affecting immovable property which are not recorded in the parish in which the property *is* situated "shall be utterly null and void, except between the parties thereto," has been recognized and applied as a settled rule of property in this state, and is equally applicable to an unrecorded title, whether it be acquired at a succession sale, by partition, by notarial or private act, or by purchase at tax sale.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 563–566; Dec. Dig. ☞233.]

On Rehearing.

2. TAXATION ☞805 — TAX DEED — INSUFFI-
CIENT DESCRIPTION—DESCRIPTIVE TITLE.

The constitutional prescription of three years cannot give validity to a tax deed which is void for want of a description by which the property can be identified.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. ☞805.]

O'Niell, J., dissenting.

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; James Simon, Judge.

Action by Charles O. Mouton against the Southern Sawmill Company for the use and benefit of the Exchange Bank of Natchitoches. From judgment for plaintiff, defendant appeals. Reversed and dismissed.

Scarborough & Carver, of Natchitoches, and Weeks & Weeks, of New Iberia, for appellant. Felix Voorhies and F. E. Delahoussaye, both of St. Martinville, for appellee.

Statement of the Case.

MONROE, C. J. Defendant caused executory process to issue under which certain lands in the parish of St. Martin, and a lot of shingles, found thereon, were seized and advertised for sale in satisfaction of a debt, due by the Breaux Bridge Lumber Company and secured by a mortgage executed by that company as owner of the lands. Plaintiff filed an opposition, setting up title to the seized property, and obtained an injunction staying the seizure. On the trial of the case, the district court held that plaintiff in seizure could attack the title set up by the plaintiff in injunction only by a direct action, and gave judgment for plaintiff in injunction. On appeal to this court, that judgment was reversed, and the case was remanded "for the purposes of a decision on the issue of title, and for further proceedings according to law." Mouton v. Southern Saw Mill Co., 130 La. 299, 57 South. 934.

Plaintiff (in injunction) then amended his petition, and, setting out the title upon which he relies, undertook to establish it, and did so to the satisfaction of the trial judge, who again gave judgment in his favor; and defendant has again appealed.

Plaintiff describes the land claimed by him and alleged to have been seized as:

"A certain tract of timbered land, containing 144 arpents in superficial area; bounded, north, by lands of estate of Alexander Mouton, or assigns; south, by lands of Marie Mouton, wife of Dr. H. D. Guidry or assigns; east, by lands of estate of Alexander Mouton, or assigns."

His title is thought to be derived, through mesne conveyances, from Valery Veillon, and its tradúction to be shown by the following, to wit:

1. A sale by the sheriff, on April 16, 1850, in execution of a judgment obtained against Valery Veillon, as former tutor of Chas. T., Thomas E., and Marie Olympe Bienvenue (the last named being the wife of Joseph Ducrest), at which Chas. T. and Thos. E. Bienvenue, and Joseph Ducrest, became the adjudicatees of the following property, as described in the sheriff's notice of seizure (the sheriff's deed not being produced, but the notice of seizure and other evidence strongly supporting the theory that the sale was made as therein indicated), to wit:

"(1) A tract of land, situated in the parish of St. Martin, in that part of said parish known as Prairie Maronne, measuring 165 superficial arpents (woodland); bounded, above, by land belonging to Alex Mouton, and, below, by land belonging to the succession of Charles Mouton. (2) Another tract of land, containing 150 superficial arpents, situated in the same place; bounded, above, by land belonging to the heirs of Martin, and, below, by Alex Mouton. (3) Two tracts of cypress swamp, situated in the same place; bounded, above, by land belonging to Charles Mouton, and, below, by land belonging to Alex Mouton, containing 25 arpents, more or less. (4) Another tract of land, situated in the same place, containing about 200 superficial arpents; bounded, above, by land belonging to A. Mouton, and, below, by land belonging to Valery Martin; also all his right, title, interest and pretensions. in the succession of Marie Perrin Sudrique, widow of Louis Veillon."

2. A sale from Joseph Ducrest and Thomas E. Bienvenue to Charles T. Bienvenue, of date January 6, 1853, in which the property sold is described as:

"All the right and title that they have, or ought to have, in and to a certain tract of land in the parish of Lafayette; * * * and, further, also the right and title to another tract of land, or cypress swamp, situated in the parish of St. Martin, containing 600 arpents, more or less."

3. A procès verbal by the sheriff of the parish of St. Martin, showing that, on March 6, 1854, by virtue of an order of the district court for the parish of Lafayette, and in conformity with action taken by a family meeting, he repaired to the residence of the late Charles T. Bienvenue, deceased, in the parish of Lafayette, for the purpose of selling at auction, to the last and highest bidder, all the property, both real and personal, belonging to said succession.

And that, after announcing the terms and conditions of the sale, he—

"proceeded to said sale * * * in the manner following, to wit:

"Lot 169. One tract of land, situated in the parish of St. Martin, at the place called Prairie Maronne, measuring 165 arpents, superficial measure; bounded, above, by the lands of Alexander Mouton, and, below, by succession of Charles Mouton; also, one other tract of land, situated in the same parish, at the same place, measuring 150 superficial arpents; bounded, above, by heirs Martin, and, below, by Alexander Mouton; adjudicated, together, to Alexander Mouton."

4. The inventory, filed in March, 1885, in the succession of Alexander Mouton, which shows (with other lands):

"(7) A tract of land, situated at Campment Brulé, in this parish (St. Martin); bounded, north, by lands of succession of Alexander Mouton; east, by the same; south, by lands of Marie Guidry; and, west, by unknown; measuring 160 arpents * * *.

"(8) A tract of swamp land: bounded, north and east, by lands of Valerien Martin; south, by lands of estate of A. Mouton; and, west, by unknown; measuring 60 arpents."

5. The act of partition between the heirs of Alexander Mouton, of date August 8, 1885, whereby Mrs. Odéide Mouton acquired a tract of land by the following description, to wit:

"A certain tract of woodland, situated in the parish of St. Martin containing 144 acres; bounded, north, by land of the estate; south, by land of Marie Guidry; east, by land of the estate; and, west, by ——; being the same land acquired by the deceased from Thimecourt" (Charles T.) "Bienvenue."

6. An act of sale from Mrs. Odéide Mouton to Charles O. Mouton (plaintiff herein), of date March 26, 1908, wherein the property conveyed is described as:

"One certain tract of woodland, situated in the parish of St. Martin, Louisiana, containing 144 superficial arpents; bounded, north, by land of estate of Alexander Mouton, or assigns; south, by land of Marie Guidry, wife of H. D. Guidry, or assigns; east, by land of estate of Alex. Mouton, or assigns. Being the same property acquired by vendor, Dame Odéide Mouton, by act of partition among the heirs of Alex. Mouton, being act No. 14,130 filed in the clerk's office, Lafayette parish, La., Oct. 1st, 1885, and recorded in Book X, p. 188 et seq., and duly recorded in clerk's office, parish of St. Martin."

Plaintiff also sets up a tax title as follows:

(1) An adjudication by the sheriff and ex officio tax collector, on June 3, 1889, to Alex Thibodeaux and Charles S. Babin, of—

"548 acres; N. part of sec. 79, T. 9 S., R. 5 E., and sec. 41, T. 10 S., R. 5 E.; assessed as unknown; formerly belonging to Francois Moreau, to satisfy amount due state and parish taxes."

(2) A conveyance, in the nature of an abandonment, or retrocession, by the adjudicatees

above named, of date August 28, 1890, to Mrs. Odéide Mouton, of such rights as they may have acquired by virtue of said adjudication.

According to the evidence, at some time prior to that at which the government laid off the territory in which the land here in question is situated into (fractional, or radiating) sections, Francois Moreau owned a long, narrow strip of the land, extending from Bayou Teche on the northeast, to Bayou Vermillion, on the southwest, which strip, since the territory has thus been surveyed and laid off, constitutes section 41, in T. 10 S., R. 5 E., containing 164 acres; section 79, in T. 9 S., R. 5 E., containing 484.52 acres; and section 101, in T. 9 S., R. 6 E., containing 155.34 acres. And it appears that, for the purposes of ownership, those sections have been divided both lengthwise and crosswise.

The title set up by defendant is shown to have been acquired by its mortgagor, the Breaux Bridge Lumber Company, in part directly, and in part through mesne conveyances, from the heirs of Charles T., and Thomas E. Bienvenue, and Joseph Ducrest, by various contracts and deeds which were recorded in the parish of St. Martin, on July 3, 1901, January 15 and September 25, 1902, and July 16, 1906; the deeds whereby conveyances were made directly to defendant, by the said heirs, as also by George S. Eastin and S. V. Martin, their assigns, having been executed and recorded on July 16, 1906, and the mortgage from the Breaux Bridge Lumber Company having been executed on July 22, 1906, and recorded (in the parish of St. Martin) on August 23, 1906. The deeds and mortgages thus mentioned cover the lands which have been seized, though there is conflict in the testimony upon the question of the identity of those lands with those claimed by plaintiff.

### Opinion.

[1] Assuming (for the sake of the argument) that plaintiff's title, to the land which defendant has seized, traces back, through the successions of Alexander Mouton and Chas. T. Bienvenue, to the sale under the execution against Valery Veillon, on April 6, 1850, that title was not recorded in the parish of St. Martin, save as the conveyance from Mrs. Odéide Mouton was recorded on April 1, 1908. When therefore, on July 16, 1906, defendant's mortgagor purchased the property and recorded its title, it appeared from the public records that their vendors were the sole owners, and had not before alienated the property, and no prior conveyance, unrecorded in the parish of St. Martin, could affect the title so acquired, by reason of its subsequent registry. The learned judge a quo was of a different opinion, and followed the decisions in Hollingsworth v. Wilson, 32 La. Ann. 1015 and other cases, in which it has been held that, where A. sells to B., who fails to record the sale, but sells to D., who records the sale to him, D. acquires a better title than C., who thereafter acquires the same property from A., as against whom no alienation thereof appears of record. It will readily be seen, however, that the instant case is not within the doctrine thus stated; for, when the defendant in this case acquired, there was no conveyance of the property of record either from the common author or from any one claiming under the common author. Moreover, the doctrine of the case cited has been categorically overruled, and this court has recognized and applied the law which declares that all contracts affecting immovable property, which shall not be recorded in the parish where the property is situated, "shall be utterly null and void, except between the parties thereto." McDuffie v. Walker, 125 La. 152, 51 South. 100; John T. Moore P. Co. v. Morgan's & Co., 126 La. 866, 53 South. 22 (cited in Riggs Cypress Co. v. Albert Hanson L. Co., 127 La. 455, 53 South. 700); Riggs v. Eicholz, 127 La. 745, 53 South. 977; Sorrel v. Hardy, 127 La. 847, 54 South. 122; Washington v.

Filer, 127 La. 871, 54 South. 128. In the case of John T. Moore Planting Co. v. Morgan's & Co., supra, the court said:

"This Hollingsworth v. Wilson decision is founded upon decisions which were made prior to the enactment of article 2266, supra, and must be considered merely as the result of inadvertence. All doubt that may have ever existed since the enactment of Act No. 274 of 1855, now article 2266, supra, as to the utter nullity for any purpose of an unrecorded title to the real estate in so far as the rights of third persons are concerned, must be considered as having been set at rest by the decision of this court in the case of McDuffie v. Walker, 125 La. 152, 51 South. 100."

Apart from the peremptory language of the law upon the subject, it appears to us that reason and considerations of equity, alike, forbid that titles to real estate should be governed and determined otherwise than in accordance with the public records. Black sells his land to White, in 1915, and White fails to record his title. In 1945, Black has an offer for the same property from Gray, and, perhaps forgetting that he has sold it, accepts the offer and sells to Gray, who records his title; and thereupon Green, as the vendee of White, records his title and claims the property under the prior conveyance from the common author. But who is most at fault; Green, who, consulting the records, finds that his proposed vendor, White, has no recorded title; or Gray, who, taking the same precaution, is informed that his proposed vendor, Black, is the owner of, and has never, so far as the records show, alienated, the property? Is a proposed purchaser of property to search the records, not only for the name of his proposed vendor, but also for the property that he contemplates buying? If so, the law should require that all real estate, as well as the names of all vendors and vendees of real estate, should be indexed; otherwise one buying property of that kind would be obliged to devote a considerable part of his life to turning over the pages of the volumes containing the conveyance records. Our con-

clusion, upon the point under consideration, then, is that, though it be conceded that the descriptions in the conveyances exhibited by plaintiff identify the property described as that which defendant has caused to be seized, the title set up by plaintiff cannot prevail over that exhibited by defendant, because it was subsequently recorded.

The tax title set up by plaintiff is in the same case as the other; i. e., it has never been recorded in the parish where the property affected is situated, hence it can be given no effect as against third persons. Meyer v. Fountain, 34 La. Ann. 987. See, also, Lyons v. Cenas, 22 La. Ann. 113; Gallaugher v. Congregation, 35 La. Ann. 831; Perron v. Maillan, 11 La. 490; Lee v. Darramon, 3 Rob. 160; Murphy v. Jandot, 2 Rob. 378.

It is therefore ordered and decreed that the judgment appealed from be set aside, the injunction herein dissolved, and the suit dismissed, at the cost of the plaintiff.

### On Rehearing.

LAND, J. [2] The plaintiff in his petition for a rehearing having pointed out that this court overlooked a cryptic notation of the recordation of the tax deed in question, a rehearing was granted, as a matter of course.

In June, 1889, Alex Thibodeaux and Chas. S. Babin, Jr., purchased at tax sale the following described lands:

"(548 acres) N. part of Sec. 79, T. 9 S., R. 5 E., and Sec. 41, T. 10 S., R. 5 E., assessed as unknown, formerly belonging to the representatives of Francois Moreaux."

In May, 1890, Mrs. Marie Odéide Mouton, Benjamin Falk, and Andrew Cayard, brought a jactitation suit against the said Thibodeaux and Babin, representing they were slandering the titles of the petitioners in and to three distinct and separate tracts, part and parcel of a larger tract, being section 79, township 9 S., range 5 E., section 21, township 9 S., R. 5 E., and sections 40 and 41, township 10,

R. 5 E., formerly belonging to Francois Moreau and Jean Chas. Dugas. The petition alleged that:

The land claimed by Marie Odéide Mouton, "containing 144 acres, is bounded north and east by lands belonging to the heirs of Alexander Mouton, south by land of Mrs. Marie Mouton wife of Homer Mouton, and west by * * *."

The petition also described the land claimed by Benjamin Falk, containing 160 arpents, as bounded by the lands of certain proprietors; and also a tract of 160 acres, in which Andrew Cayard claimed one undivided third interest.

This suit was compromised by act of date August 28, 1890, and recorded November 24th of the same year, in which said Thibodeaux and Babin retroceded, transferred, and set over unto the three plaintiffs in said suit all their rights, titles, and interest which they had in and to the tracts claimed by said plaintiffs in their petition; that is, they renounced and abandoned unto, and in favor of said parties, all the rights, titles, and interest that they may have acquired to said particular tracts or parcels of land, to quote, "which are designated as under Nos. 1 and 4—out of lot No. 1—containing one hundred and sixty arpents, in superficial area, two arpents front from the northeast line, by ten arpents in depth, are retained and not transferred," making a retrocession of only 140 arpents out of said lot 1, as per plan of Jackson, surveyor, etc.

The plaintiffs, through their agent, accepted the "transfer and retrocession."

The consideration was the sum of $57.15, and a grant of right of way "on the northwest boundary of the tracts or parcels of land, herein retroceded." The price was about 20 per cent. over and above the taxes, costs, etc., paid by the tax purchasers.

This retrocession, or abandonment, was in favor of all three of the plaintiffs in that suit, and was in no proper sense an acquisition of a new title by any of them. If they,

as alleged, owned certain lands described in the tax deed, they owed the taxes assessed against the same, and the price of the retrocession operated merely as a redemption or payment of the taxes. See Duvigneaud v. Loquet, 131 La. 568, 59 South. 992; Bossier v. Herwig, 112 La. 539, 36 South. 557.

The transaction was a compromise of a lawsuit. The act of compromise was not a conveyance, but a renunciation of claims of title to certain tracts of land by the tax purchasers.

As to the tax title, it appears that the tax sale purported to convey 584 acres of land, N. part of section 79, T. 9, R. 5 E., and section 41, T. 10 S., R. 5 E., assessed to unknown owner, but formerly belonging to the representatives of Francois Moreau.

It is conceded that the land in dispute is not located in said section 41, which is in a different township and was correctly described. Defendants contend that description in the tax deed in so far as it relates to section 79 is void for uncertainty.

Section 79 was superimposed upon a very narrow and very long Spanish grant, which was confirmed to Francois Moreau. The contiguous section 21 was superimposed upon a similar Spanish grant, which was confirmed to John C. Dugas. Moreau and Dugas prior to 1831 sold out to the Martin family, who partitioned both sections as a whole in the year 1834, by virtue of a judgment of the district court for the parish of St. Martin. The partition was made pursuant to a plan made by Wm. B. Jackson, deputy surveyor, by which the property was divided into a number of lots.

More than a half century later the assessor of the parish of St. Martin made the assessment under which the "north part of Sec. 79" was sold at tax sale to Thibodeaux and Babin, as property formerly belonging to the representatives of Francois Moreau —owner unknown. The words "north part"

in themselves do not indicate any definite quantity of land, nor has there been produced any survey, plan, deed, or other record, tending to show that section 79 has ever been divided into a north part and a south part. On the contrary, the Jackson survey of 1832 demonstrates that sections 79 and 21 were subdivided as one tract of land. Hence it is plain that the tax sale in question was void as to land in section 79, and conveyed no title whatever to the purchasers, who evidently knew of this radical defect in their tax title as shown by the retrocession aforesaid.

Where the description in a tax deed is insufficient to identify the land sold, nothing passes by virtue of the sale. Levy v. Gause, 112 La. 789, 36 South. 684.

The prescription of three years cannot give validity to a tax deed which is void for want of a description by which the property can be identified. Brock v. E. McIlhenny's Sons, 136 La. 903, 67 South. 951. A retrocession and abandonment of their tax title by the purchasers to and in favor of parties claiming to be the owners of property sold, as belonging to unknown owners, conveys no new title to the claimants. Otherwise, on the question of title, we see no good reason to change our former conclusions.

It is therefore ordered that our former decree herein be reinstated and made the final judgment of the court.

O'NIELL, J., dissents.

═══════════

(70 South. 848)
No. 21495.
MILLIKEN & FARWELL v. ROGER et al.
(Jan. 10, 1916. On Application for Rehearing, Feb. 7, 1916.)

(*Syllabus by Editorial Staff.*)

1. HOMESTEAD ☞140—MORTGAGE FORECLOSURE—COMMUNITY PROPERTY HELD IN INDIVISION—EXEMPTION.

Upon the foreclosure of property belonging to the community of acquêts and gains between the mortgage debtor and his wife, where at the time the seizure was made under the foreclosure proceedings the wife had died, and the property was held in indivision by her heirs and the mortgage debtor, he was entitled to $2,000 out of the fund derived from the foreclosure sale as a homestead, by reason of having a daughter dependent upon him for support, since the principle that homestead right is not allowed upon property held in indivision does not apply where the indivision has been brought about by the death of one of the spouses.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 259, 260; Dec. Dig. ☞140.]

2. HOMESTEAD ☞17 — "DEPENDENT" ON OWNER.

The testimony by such debtor that his daughter was 34 years old, that she was unable to perform clerical work, or to do anything to earn her living, that she depended entirely on him for support, and that she was very delicate in health, established the dependence of the daughter.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 18; Dec. Dig. ☞17.

For other definitions, see Words and Phrases, First and Second Series, Dependent.]

3. AGRICULTURE ☞13—LIEN OF OVERSEER—CROPS NEEDED TO KEEP PLANTATION GOING.

In such foreclosure proceeding the plantation overseer and his assistant for that year filed third oppositions, claiming a privilege superior to the mortgage upon hay and corn produced on the plantation during the year of the seizure. The corn and hay in question was needed for feeding of the stock on the plantation for making the crops of the next year. *Held,* that the privilege claimed did not extend to such crops, since such privilege can extend only to the merchantable part of a crop, and not to that part needed to be retained to keep the plantation going.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 31-33, 36, 37; Dec. Dig. ☞13.]

4. ESTOPPEL ☞68 — POSITION IN JUDICIAL PROCEEDINGS—MORTGAGE FORECLOSURE—SEQUESTRATION OF CROPS—SEIZURE ON EXECUTORY PROCESS — OVERSEER'S PRIVILEGE — CLAIM AGAINST PROCEEDS OF SALE.

Before the seizure under such foreclosure proceedings, the overseer and his assistant had caused such crops to be sequestered, and had obtained a judgment maintaining the sequestration, the crops, however, being allowed to remain on the plantation. It was contended that such crops ceased to be immovables by destination, and as such were not subject to the seizure under the mortgage. *Held* that, since the overseer and his assistant had filed third oppositions claiming the proceeds of the foreclosure sale of such crops, they thereby judicially recognized the validity of the seizure under the foreclosure, rendering immaterial the question whether or