## GIARRATANO v. ANGERMEIER

---

(November 14, 1927. Opinion and Decree.)
(December 12, 1927. Rehearing Refused.)
  (January 20, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Registry—Par. 7.**
All contracts affecting immovable property shall be recorded in order to affect third persons.

2. **Louisiana Digest—Registry—Par. 7.**
Knowledge is not equivalent to registry.

3. **Louisiana Digest—Registry—Par. 7, 8.**
The recordation must be made in the correct names of the parties to the contract.

4. **Louisiana Digest—Registry—Par. 7, 8.**
The registry of an act against "Callock" cannot affect property owned and registered in the name of "Colark".

5. **Louisiana Digest—Servitude—Par. 6, 7, 8, 15.**
A servitude of passage can be acquired only by title; it cannot be acquired by destination de pere de famille It was, therefore, error to have heard testimony to establish it.

6. **Louisiana Digest—Prescription—Par. 225.**
Prescription cannot be pleaded in the Supreme Court unless the proof of it appears in the record.

Appeal from Civil District Court. Hon. M. M. Boatner, Judge.

Action by Joseph Giarratano against Mrs. Julia Angermeier.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed in part and reversed in part.

Theo. Cotonio, of New Orleans, attorney for plaintiff, appellee.

Curtis & Hall, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. The plaintiff herein claims a right of passage over defendant's property. The facts are as follows:

By an act before H. Loomis, Jr., notary, dated November 22nd, 1923, recorded in the conveyance office, book 368, page 417, the Suburban Building and Loan Association sold to the defendant, Julia Angermeier, widow by first marriage of Bernard Graff, and wife by second marriage of William Gerchow, the following property:

"A certain lot of ground, situated in the Seventh District of this city in the square No. 194 bounded by Dublin, Carrollton Avenue, Jeannette and Birch streets, designated as lot B on a blue print made

by E. L. Eustis, surveyor, dated August 30th, 1923, annexed to the act of purchase of the Suburban Building and Loan Association, which lot B measures 27 feet front on Dublin street by 130 feet deep and commences at a distance of 94 feet from the corner of Birch street; together with the improvements thereon designated by the Nos. 1525-27 Dublin street; being the same property purchased by the Association from Mrs. Charlotte Lapleau by act of Harry L. Loomis, Jr., dated November 22nd, 1923."

Mrs. Lapleau purchased from Phoenix Building Association by act of Robert E. O'Connor dated December 16th, 1921, Reg. C. O. Bk. 347, p. 181.

Phoenix Building Association purchased from W. O. W. Cummings by act before Robert E. O'Connor dated December 16th, 1921.

Widow Cummings purchased from Joseph "Colark" by act of W. Morgan Gurley, notary, dated December 18th, 1920, Reg. C. O. Bk. 330, p. 48.

Joseph Colark purchased from L. Jansen by act F. D. Charbonnet dated August 27th, 1919, Reg. C. O. Bk. 308, p. 447.

In all of the above acts mortgage and conveyance certificates are mentioned, especially in the act of sale of Joseph Colark to Widow Cummings, and in none does it appear that there is a servitude or right of passage in favor of any other lot or of any third person.

The plaintiff alleged that by act of Wm. R. Kerr, notary, dated September 16th, 1920, Reg. C. O. Bk. 327, p. 274, he purchased from Nancy Guifria Widow Louis Porpora the following property:

A certain lot of ground in the same square 194 above mentioned designated as lot "C" commencing at a distance of 150 feet from the corner of Jeannette and measuring 30 feet front on Dublin by 130 feet deep.

Immediately after this description appears the following declaration:

"And to these presents personally came and appeared Mr. Joseph 'Callock' of full age and residing in this city and the said Joseph 'Callock' and the vendor herein, Mrs. Nancy Porpora, declared that whereas the former is the owner of lot B and the latter of lot C of said square 194, they hereby establish for the common use and the use of the present purchaser and of all future owners of lot B and C, the actual width of said alley and as at present constituted and in use by the parties to be ascertained by a sketch of survey to be annexed to this act for reference."

At the bottom of the act are the words:

His
"Joseph X Kalark, Registered in Con-
        Mark
veyance Office Book 327, folio 274."

It does not appear anywhere in the record whether this intervention of Joseph "Callock" was registered, nor in what name, whether "Callack" or "Collack". But the presumption is, if registered at all that it was registered in the name of "Callock", the appearer, inasmuch as the conveyance certificate in the name of "Collack" annexed to the act of W. Morgan Gurley is clear as well as the conveyance certificate dated May 30th, 1924, in the name of Joseph Colark filed in the transcript is clear, "except sale December 18th, 1920, to Mrs. W. Cummings, C. O. B. 330, folio 48".

This intervention of "Joseph Callock" was in an act dated September 16th, 1920.

The sale of lot B made by "Colark" to Widow Cummings was dated December 18th, 1920. The certificate of conveyance annexed to this act was clear. Plaintiff claiming his right of passage and servitude

by a prior title assumed the burden of proving that his title had been registered in the Conveyance Office, in the manner required by law.

He claims title, not from "Colark" but from "Callock". We must presume that his title was registered in that name. This presumption is made certain by the clear conveyance certificates issued in the name of "Colark" by the Conveyance Office. Plaintiff has not shown that his title was registered in the name of Colark and that the conveyance certificate is not correct. The names of "Colark" and "Callock" are evidently different. Certainly different for the Conveyance Office where the researches are made from an index alphabetically arranged. In looking for the name "Callock" the clerk would not run the letter "O", nor the letter "A" in looking for 'Colark', nor would any third person searching for a sale.

The opinion in Agurs vs. Belcher, 111 La. 378, 35 So. 607, is not in point. In that case the right name Johnson appeared in the act of sale and in the registry. But the clerk erroneously indexed it in the name of Jones. But in the case under consideration there is a difference in the names of the vendors; and the names are properly registered and indexed according to the acts. Even if the defendant had examined the body of the registry books they would have seen "Callack" and not "Colark" as a vendor.

To decide in favor of plaintiff it would be necessary to hold that an alienation of property by Joseph "Callock" registered as such could affect property owned and registered in the name of Joseph "Collark" and sold by him. In the recent case of Impastato this court held that an inscription for paving against Walter P. "Connell" could not affect the rights of

third persons upon property owned and registered in the name of Walter P. "Connole". The test of the validity of the "Callock" inscription as against "Collark" is found in the question, could the register of conveyances have been held liable for failure to report an inscription against the latter in a certificate in the name of the former?

The plaintiff argues that the names of vendors and vendees are immaterial; that the law looks only to the property conveyed. This argument is refuted by Section 2430 R. S. and Art. 2259 C. C. reading as follows:

"In the Parish of Orleans, when the act of transfer of property shall have been passed before a notary public, it shall be sufficient that the registering of the act be made on a certificate being presented from the notary who shall have passed said act containing:

"First: The date of the act, and the place where it was passed;

"Second: The names, surnames and qualities of the contracting parties;

"Third: The description of the immovable property which has been transferred with all necessary details;

"Fourth: The price of the transfer whether paid in ready money or on time, in the latter case what the terms and conditions are."

It will thus be seen that the law makes as essential requisites of the registry, among other things, of names, surnames, and qualities of the contracting parties.

Upon that subject Judge Monroe said in Mouton vs. Southern Saw Mill, 138 La. 819, 70 So. 813:

"Is a proposed purchaser of property to search the records, not only for the name of his proposed vendor, but also for the property that he contemplates buying? If so, the law should require that all real

estate, as well as the names of all vendors and vendees of real estate, should be indexed; otherwise one buying property of that kind would be obliged to devote a considerable part of his life to turning over the pages of the volumes containing the conveyance records."

The plaintiff argues again that the defendant cannot plead want of registry of plaintiff's title to the servitude because she was aware of it prior to the sale by reason of the following clause of her offer to purchase:

"I offer and agree to purchase the property known as numbers 1525-27 Dublin street with all ground and improvements belonging thereto subject to a community alley right on 1527 side."

The law of the case is contained in Article C. C. 2266. It reads as follows:

"All sales, contracts, and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording."

The law is clear and free from ambiguity and has been enforced in decisions too numerous to mention. The controverted question was whether "knowledge" was equivalent to registry. It was finally decided that it was not in McDuffic vs. Walker, 123 La. 152, 51 So. 100. Affirmed in Schneidau vs. N. O. Land Co., 132 La. 264, 61 So. 225; 6 Orl. App. 359; 12 Orl. App. 363; Baird vs. Atlas Oil Co., 146 La. 1099, 84 So. 366; Woodcock vs. Baldwin, 51 La. Ann. 989, 26 So. 46.

Upon the authority of those decisions we must decide that the clause in the offer to purchase was not equivalent to registry.

Plaintiff's allegation that the servitude of passage claimed by him was established by a former owner of the two lots now owned by plaintiff and defendant lends no force to his case under the law. C. C. 766 (762) Continuous non-apparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title. "Art. 767 (763). The destination made by the owner is equivalent to title with respect to continuous apparent servitudes."

C. C. 727 (723). "Discontinuous servitudes are such as need the act of man to be exercised. Such are the rights of passage, of drawing water, pasture, and the like."

"A servitude of passage is not continuous, and can result under no circumstances from the destination de pere de famille, the former proprietor of the adjacent estates." Fisk vs. Haber, 7 La. Ann. 652; Cleris vs. Tieman, 15 La. Ann. 316; Larcade vs. Iseringhausen, 153 La. 976, 96 So. 830; 9306 Orl. App.; C. N. 691, 692, 693; 8 Laurent, Nos. 172, 182; 12 Demolombe, p. 316, Sec. 815, 821, 822.

As the servitude of passage cannot be acquired by any other but a written title and cannot result from a destination de pere de famille, it was error on the part of the trial judge to have heard any testimony to establish it.

In a supplemental petition the plaintiff prayed that the fence which had been removed by the defendant be reinstated in its former position. There was judgment against him on that point. The trial judge seems to have decided correctly as the fence was removed upon the lines separating the two properties according to a survey and sketch made by a surveyor. In this court the plaintiff has pleaded the prescription of ten years, alleging that the fence "had been erected for more than ten years prior to its removal". The record contains no proof of that allegation. Therefore it cannot be considered by this court. C. C. 3465 (3428).

It is therefore ordered that the judgment appealed from in so far as it rejects the demand of the plaintiff for the moving of the fence as now existing be affirmed, and that in all other respects said judgment be reversed, annulled and set aside, and that plaintiff's demands be rejected at his cost in both courts.

Judgment affirmed in part and reversed in part.