Statement of the Case.
NIOHOLLS, J.
The plaintiff, in his petition filed June 4, 1907, alleged that he is the owner and in possession of the following described property: A certain square of ground, together with all the improvements thereon, in the First district of this city, bounded by Miro, Tonti, Erato, and Jefferson Line, designated as square 538, as appears from Auditor’s deed annexed hereto and made a part hereof.
That the state of Louisiana purchased ■said property from Patrick Murphy at a sale made by the tax collector of the First district of this city for taxes under an assessment made in the name of Patrick Murphy per act passed before-, notary public, ■on the —--- day of -, 1890, Reg. C. ■O. -4 fol. -.
That the said property was unimproved (swamp land) property, and came into the possession of the state of Louisiana by a mere registry of the deed conveying said property to the state of Louisiana, which possession has been continued for more than three years previous to the date hereof.
That the said Patrick Murphy died in this city some time ago, leaving as his sole and only heirs his children, viz., Catherine Murphy, widow of Thos. B. Green, James Murphy, Joseph P. Murphy, Margaret Murphy, deceased wife of M. J. McAvoy, and Mary Ann Murphy, also deceased wife of M. J. McAvoy. That Margaret Murphy McAvoy died in this city, leaving as her heirs her children, Chas.. D: McAvoy, Philip McAvoy, and Mary McAvoy, deceased wife of George Chisolm. That Mary Ann Murphy McAvoy died in this city, and left as her sole heirs her children, Julia McAvoy and Catherine McAvoy. That Mary McAvoy Chisolm died in this city, and left as her sole heirs her three minor children, Joseph Chisolm, Irma Chisolm, and Effie Chisolm.
That all the above-named parties save Joseph, Irma, and Effie Chisolm, are of the full age of majors and reside in this city.
That Joseph, Irma, and Effie Chisolm are minors who reside in this city. That they are without a tutor, and that it is necessary that a special tutor or curator ad hoc be appointed to represent them. That George Chisolm, their father, still lives, and is a proper person to be appointed special tutor and curator ad hoe to said minors.
In view of the premises, petitioner prayed that-be appointed and sworn special tutor and curator ad hoc to the minors Joseph, Irma, and Effie Chisolm; that James Murphy, Joseph Murphy, Mrs. Catherine Murphy, widow of Thos. B. Green, Chas. D. McAvoy, Philip McAvoy, Julia McAvoy, Catherine McAvoy, Irma Chisolm, Joseph Chisolm, and Effie Chisolm be cited to answer hereto; that in due course petitioner have judgment in his favor, and against said parties, confirming his title to the herein-above described property, and for costs and general and equitable relief.
*213 On June 17, 1907, defendants excepted to plaintiff’s demand:
First. That the petition was too vague, gen■eral, and indefinite to require them to answer thereto.
Second. That said petition disclosed no right nor cause of action against them.
These exceptions having been overruled on the same day, defendants answered. They first pleaded a general denial. Further answering, they alleged that on April 5, 1867, by act before G. W. Christy, N. P., Reg. C. O. B. 93, folio 139, the late Patrick Murphy •acquired the following described property, viz.:
“Five lots of ground, with all the improvements thereon and appurtenances thereof, and •all rights, ways, etc., situated in the First district of this city, designated by the numbers 1 to 5 in square No. 538, which is bounded by Miro, Tonti, Thalia, and Erato, a sketch whereof is deposited for reference in the office of G. W. Christy, N. P., as plan No. 3. Said lot No. 1 measures 61' 9“ 3"' front on Miro street, 23' 6'' 5"' in the rear, by 120' in depth on the line of lot No. 2, and 125' 9'' 5'" on the dividing line between the First and Fourth districts. Said lots No. 2 and 3 measure each 32' front on Miro street by 120 feet in depth between parallel lines. Said lot No. 3 forming the corner of Miro and Erato streets. Said lot No. 4 measures 64' 4" front on Erato street, 67' 1" 5'" in width in the rear, by a depth of 87' 6" 5'" on the side nearest to Miro street, and a depth of 66' 9" 6'" on the side line nearest to Tonti street, and measures 28' 7" front on Tonti street, 66' 9“ 6'" in width in the rear by a depth and front on Erato street of 120 feet and 125 feet 9 inches and 5 lines in depth on the line dividing the First from the Fourth district.”
That the said Patrick Murphy died in this city on the 23d day of March, 1888, and his succession was duly opened under No. 25,-017 of the docket of said court, in which proceedings the said property was inventoried, and administratrix was appointed and qualified, hut shortly thereafter the said ad-ministratrix departed this life, and your respondents, as the sole and only heirs of the said deceased and of his subsequently deceased wife (widow in community), went into possession of his estate.
Now your respondents aver that the said pretended tax title of the said plaintiff is illegal, null, and void, and of no effect, for the following, among other, reasons, viz.:
First. The said property was never offered for sale under the provisions of Act 80 of 1888 at public auction and failed to sell, and hence no warrant in law existed for the sale of the said property under the provisions of Act 126 of 1896, or Act 80 of 1888, § 3; and your respondents show that the statement made in the said act to the plaintiff that the said prop-1 erty had been so advertised was fraudulently made, and operated and seeks to operate a deliberate fraud upon your respondents.
Second. That the said property was not sold for the price and on the terms stipulated by Act 126 of 1S96 and Act 80 of 1888, in that the amount paid at the consideration for the said purported Auditor’s deed is not the amount which the law fixes as a condition precedent to be paid the state to effect a sale under the provisions of the said acts.
Third. That the purported sale to the state of Louisiana was never preceded by any notice to the lawful owners of the said property as the ■Constitution and laws of this state require.
Fourth. That the said purported adjudication to the state of Louisiana was never preceded by any lawful advertisement, in that the last advertisement in English of the said property was advertised on Saturday in an evening paper; the advertisement appearing after the hour fixed for the sale of the said property on-that day.
Fifth. That the said property was incorrectly and insufficiently described in the assessment thereof, the said assessment being insufficient to identify same; besides the said property was assessed in the name of one deceased as if alive, and was so advertised and adjudicated.
That, the said property never having been offered under the provisions of Act 80 of 1888, the pretended acquisition thereof by the plaintiff from the state of Louisiana simply operated as a relinquishment of the title of the state of Louisiana, and operated as a redemption of the said property from the state from the effect of the said tax sale purported to have been made the said state, and removed the said cloud from the said title of respondents to the said property, but created no new title whatever in the plaintiff.
That the said pretended tax title of the plaintiff as set forth by him should be decreed an absolute nullity, and this they demand in re-convention, and, further, for the recognition of their ownership of the said property, which is well worth the sum of $2,Í00.
In view of the premises, respondents prayed that the demand of plaintiff be rejected, and that respondent be recognized as the owners in indivisión of the said property as hereinabove correctly described, and further *215 ordering the cancellation of the pretended tax title of the plaintiff from the convey anee records. And they further prayed for all costs and for general relief.
On March 24, 1909, plaintiff pleaded the prescription of three years in bar to the attack made by defendant upon his title. He further pleaded that the defendants were estopped from attacking the adjudication to the state because:
lfirst. They have abandoned the property -involved herein to the state.
Second. Because that they have permitted the adjudication and title to the property herein involved to remain on the books of the conveyance office for this parish unattacked and unquestioned for a period of 18 years, and only raised this question after plaintiff had changed his position and parted with his money.
In view of the premises, he prayed that these pleas be maintained, and that defendants’ attack upon plaintiff’s title be dismissed at defendants’ costs, and for general and equitable relief.
On the trial the following agreement between counsel was filed: >
In the above numbered and entitled cause, in order to save costs, the following admissions are made by the respective parties to this litigation, through their respective attorneys, viz.:
(1) It is admitted that the property involved in this litigation was acquired by the defendants’ ancestor, as set up by them in their answer, under the description as contained in the said answer, and that the title of the said ancestor was duly put of record.
(2) It is admitted that the succession of the father of the said defendant was duly opened as set forth in the said answer, and that the heirs and his widow were put in possession of his estate under judgment therein rendered and duly registered.
(8) It is admitted that the mother of the defendants died as set forth in said answer, and, further, that the defendants appearing. in said answer are the sole and only heirs of the deceased mother, who died a widow, and are also the sole heirs of the said Pat Murphy.
(4)It, is further admitted that the property as described in plaintiff’s petition was adjudicated to the state of Louisiana by the tax collector of the First district of the city of New Orleans, for the unpaid state taxes for the years 1888, 1889, and 1890, assessed in the name of “Pat Murphy,” and that the title of the state of Louisiana was put of record in C. O. B.
140, folio 149, on the 21st day of July, 1901; the property being adjudicated on July 11, 1891, under the current revenue act of 1888.
(5) It is further admitted that -febc-gaid prop-ftiT-y-has never been-offered fw-sate-by-the-St-at-e-r&tB — Collector of --the ■■■ First ■ diotrjot at-publio-aae-t-ion- under the-gí-ovisiona-of-Aot-SO of-ISSS.'
(6) It is further admitted that the said property is vacant and unimproved, and at the time of the said tax adjudication to the state of Louisiana was a swamp, and continued so up to 1904, but it is now drained under the general system of drainage of this city, and that the said property is unbanquetted and unin-closed, nor are there any improvements upon it.
All of the said admissions are made by both parties with the express reservation of their rights under the law, and in no manner admitting that any of such evidence is admissible, and under the issues herein raised or the law applicable thereto.
[Signed] Geo. J. Untereiner,
Attorney for Plaintiff.
Richardson & Soule,
Attorneys for Defendants.
(5) It is further admitted that the books of the state tax collector of the First district of the city of New Orleans do not show that the property herein involved was ever offered at public auction by the tax collector of the First district under the provisions of Act 80 of 18SS, and Hon. John Fitzpatrick, present tax collector, and Hon. O. Harrison Parker, his predecessor in office at the time of said sale to the state, would, if present in court, testify that the said property was never offered by said tax collector under said Act SO of 18SS.
[Signed] Geo. J. Untereiner.
On June 1st the district court rendered the following judgment in favor of plaintiff, H. F. Graham, and against defendants, James Murphy, Joseph Murphy, Kate Murphy, wife of Thomas Green, Kate McAvoy, Julia Mc-Avoy, Charles McAvoy, Philip McAvoy, and the minors, Irma Chisolm, Effie Chisolm, and John Chisolm, represented here by George-Chisolm, their natural tutor and tutor ad. hoc, recognizing the plaintiff to be the owner of, and confirming his title to, the following described property, to wit:
“A certain square of ground together with all the improvements thereon, in the First district of this city, bounded by Miro, Tonti, Erato and Jefferson Line, designated as square 538 as appears from the Auditor’s deed annexed to and made a part of the plaintiff’s petition.
“It is further ordered that the defendants’ reeonventional demand be dismissed, and that all costs of suit be paid by defendants.”
*217 Defendants moved for a new trial for tlie following, among other, reasons:
(1) The evidence established that the deed upon which the plaintiff relies was issued without any warrant therefor, because that the State Auditor had no authority to sell such property under the provisions of Act 80 of 1888 and Act 126 of 1896 until the said property had been first offered at public auction by the tax collector where the property was situated and had failed to sell. It being fully established that this had not been done, there was no warrant for the Auditor to sell, and the deed issued by him was null and void ab initio.
(2) The title of the state being inchoate, the attempted purchase of the said property by tlie plaintiff simply operated as a divestiture of the claim of the state, and restored the said property to the same condition in which it was prior to the adjudication made it; and hence the said property became restored to the defendant by said redemption from the said tax adjudication, the defendants being, however, bound to refund to the plaintiff the amount which he had expended in the said redemption, as also any other taxes which he may have paid thereon.
(3) The evidence showed that the plaintiff was not in possession, and was without valid title,' and the court erred in holding that the validity of the purported tax title could hot be attacked after three years by defendants, who are in the civil possession of the said property. The plaintiff had no tax title, because the purported tax title was issued without a warrant therefor; hence article 233 of the Constitution of 1898 has no application to such a case as is. here presented.
(4) It was error to hold that the defendants were without right or interest to set up the illegalities of plaintiff’s purported title from the State Auditor. After the adjudication to the state, it continued to assess the said property to the defendants, thereby admitting their right to redeem therefrom. While the state had the right to dispose of the said property at public auction under the provisions of Act SO of 1S8S. had it so advertised same, defendants would have then redeemed same; but, not having so advertised it, they had the right, the permissive redemption right, of divesting the title of the state at any time up to the moment when such property should be adjudicated under the provisions of Act 80 of 1888, and, this right having been exercised by a negotiorum gestor, his act in redeeming, although termed a purchase, inured to their benefit.
A new trial was refused, and defendants appealed.
Opinion.
It appears from the evidence: That on November 9, 1906, the plaintiff filed a petition, in which, after reciting that he was the owner of square No. 538 in the First district of New Orleans, bounded by Miro, Tonti, Erato, and Jefferson Line, having purchased the same from the state of Louisiana as. per deed executed by Paul Capdevielle, State Auditor, on July 16, 1906, which property the state acquired by an adjudication made to it by the State Tax Collector for state taxes by deed executed by said Tax Collector.
That he was desirous of being placed in possession of said property. That in order so 'to do it was necessary that a writ of possession issue to the sheriff of the parish of Orleans, commanding him to seize and in due course to place petitioner in possession of same, and he prayed accordingly. An order that a writ of possession issue as prayed for was granted, but the proceeding seems to have been abandoned; and the present proceedings were filed on June 4, 1907, in which the plaintiff declares upon a deed from the State Auditor, his authority for executing a deed being based on Act No. 126 of 1896.
In the Auditor's deed it is recited that the property conveyed by him to the plaintiff was adjudicated to the state by the tax collector of the First district of New Orleans on the 21st of July, 1891, as the property of Pat Murphy, for unpaid taxes due the state for the year 1890, and had been advertised and offered for sale by State Tax Collector in accordance with the provisions of Act No. 80 of 1888, and failed to sell.
The truthfulness of this last statement was put at issue by the defendants, and over the plaintiff’s objection to any evidence being introduced on the subject it was established on the trial that the Auditor was not war ranted under the facts in the ease in making this last statement. The objection urged by the plaintiff was that the defendants were without reason or interest to contest; that, their title to the property having passed in 1891, the property ■ then became the property *219 of the state of Louisiana, and it had the right to dispose of it as it saw fit.
That it had directed its officers to do that, and if those officers had violated their duty under the law the state of Louisiana was the only one that could'attach the Auditor’s action, and the defendants could not. Though the trial judge admitted the evidence, he ultimately sustained the plaintiff in the position which he took on that question. Defendants made the correctness of that ruling one of the special grounds for their motion for a new trial.
The plaintiff sues upon a conventional deed to him, executed by the State Auditor; the Auditor’s authority to make said deed being based upon Act No. SO of 1888, Act No. 126 of 1880, and Act No. 126 of 1896.
An examination of that act discloses that the situation and conditions upon which the Auditor warranted in making the deed did not exist. It was an essential prerequisite to a sale being made by that officer that, after the property was adjudicated to the state and notification of the fact given to that office, the latter should have forwarded to the tax collector who had made the sale a list of the properties which had been so adjudicated to the state, approved by him.
Upon receiving said list, the tax collector should have proceeded at once to advertise and sell the properties. In the advertisement, advertising such sales, there should have been given by the tax collector a full and complete notice to all persons and parties in any way interested in said property (no other notice being required; the same operating as a full notice to all). The property in the advertisement should have been condensely described, and in the deed of sale the property should be more fully and correctly described. The advertisement should have contained the name of the party to whom the property .had been adjudicated, and the name of the party who claimed to be the owner thereof, and the year for which such adjudication was made, and the amount of the adjudication.
When the property sold to the state for-unpaid taxes had been once advertised for sale in accordance with the provisions of the act, and had failed to sell, then, and then only, the Auditor was authorized to receive-bids for such unsold property, and sell the-same, and execute a deed thereto.
The titles to the state acquired under such an adjudication were declared to be good and perfect. The evident object of this statute was to afford to the owner of the property an opportunity of purchasing at the second adjudication, and thereby practically redeeming the property, and on his failure to avail himself of this opportunity to oppose the first adjudication, or to purchase the property, then and thereafter to close the door to further contest.
It appears from the pleadings that the defendants contest the legality of the adjudication to the state in 1891 on serious grounds. They are admittedly the heirs and representatives of the original owner, and have a direct interest in availing themselves of the opportunity afforded them by Act No. 80 of 1888 of contesting that adjudication, or of' purchasing at the second adjudication, either directly or through the assistance of others.
The state was interested in this matter no further than obtaining the sums due to it. It was certainly not its purpose, by authorizing the Auditor to sell properties adjudicated to it, to allow the fact of such adjudication to remain unnoticed and unacted on for years, and then suddenly and without notice or warning to the original owners to-have the properties sold ex parte to third parties for a mere pittance. That was not the object of the law, and that should not be permitted to be the effect of its enactment.
Independently of what has been said, we- *221 think that the defendants in the suit have a direct interest in questioning the rights which plaintiff advanced in this suit. He has judicially admitted that he is out of possession, and that a writ of possession is necessary to perfect such rights as he may have in the premises.
By citing the defendants herein, he has recognized that they are heirs of the original owner, and that they have an interest in the subject-matter of the suit. Whatever be the form of the proceedings, it is practically a rule for defendants to show cause, if any they have, why plaintiff’s right to the ownership of the property should not be closed by judicial decree.
They have in answer to the demand shown cause. The plaintiff in any case must establish affirmatively his right of action when contested. Plaintiff in this case cannot call upon the defendants to contest his claim, and, when they do contest, deny that they have any interest in the subject-matter of the litigation.
We are of the opinion that the judgment appealed from is erroneous, and plaintiff’s demand as herein presented is not well founded. For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is, hereby annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that plaintiff’s demand and suit be dismissed, with costs in both courts.