(70 South. 324)

No. 21547.

ALEX HUTCHINSON & SON v. RIGGS-TERRELL LUMBER CO. et al.

(Nov. 29, 1915.)

(Syllabus by the Court.)

1. MORTGAGES ⟨⟨⟨311 — CANCELLATION — RIGHTS OF JUNIOR MORTGAGEE.

A note and mortgage, given as collateral security by a party to a lumber contract, to secure any balance that might be found to be due, by the one party to the other at the expiration of the contract, will not be ordered canceled at the instance of a holder of a junior mortgage, where it is not shown that the original contract has been fully executed and the obligations thereunder discharged.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 919–929; Dec. Dig. ⟨⟨⟨311.]

2. EVIDENCE ⟨⟨⟨419—PAROL—CONSIDERATION OF NOTE AND MORTGAGE.

It is competent to show by proper evidence that a promissory note and mortgage were issued as collateral security for a prior contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. ⟨⟨⟨419.]

Appeal from Twenty-Fifth Judicial District Court, Parish of Livingston; Robert S. Ellis, Judge.

Action by Alex Hutchinson & Son against the Riggs-Terrell Lumber Company and others. From judgment for plaintiff, the defendant named appeals. Reversed and rendered.

Borah, Himel & Bloch, of Franklin, and Wayne G. Borah, of New Orleans, for appellant. R., C. & S. Reid, of Amite, for appellee.

SOMMERVILLE, J. Plaintiffs are holders of a note and mortgage in the sum of $1,200, issued to them by Harold J. H. Richards, in settlement of an account for supplies furnished to him, and bearing upon the property of said Richards in the town of Corbin, parish of Livingston. They are suing to enjoin the sale of that property under executory process sued out by the defendant the Riggs-Terrell Lumber Company, holder of the first mortgage or vendor's lien, for $2,700, reduced to $284, for which smaller amount the writ was issued. They also sue defendant for the cancellation of this first, and a second, mortgage, held by it, the latter for the sum of $10,000, on the ground that the two notes secured by said first and second mortgages have been fully discharged, paid, extinguished, and compensated.

It was admitted on the trial that there was a balance of $284 due on the vendor's lien note, which was secured by the first mortgage of $2,700; and the court so found in the judgment appealed from, but the writ of injunction to restrain the sale of the property was maintained. This was error. The injunction should have been dissolved, at the cost of plaintiffs.

There was further judgment decreeing that the $10,000 note and mortgage referred to, and which was second in rank, had been fully paid, satisfied, and discharged; and the inscription of the same in the mortgage office was ordered canceled and erased, in so far as it affected the rights of the plaintiffs herein.

Defendant the Riggs-Terrell Lumber Company has appealed.

Defendant filed a plea to the jurisdiction of the court, but that was not urged in the district court, and it is not urged in this court.

The record discloses that October 21, 1912,

Harold J. Richards, the owner of the property involved in this suit, was operating a sawmill on the property, and that he entered into a contract with the Riggs-Terrell Lumber Company, by which he sold to the Riggs Company all of the lumber manufactured in his mill at Corbin, in which act of sale it was stipulated he was to receive 75 per cent. of the purchase price when the lumber was stacked upon the ground, and the balance when the lumber was shipped out. Richards required sums in excess of the 75 per cent., and on December 9, 1912, he executed a mortgage to the Riggs Company in the sum of $10,000, to secure the Riggs Company in any sum which might be due under the contract of sale, when the same would have terminated.

[1] This is the mortgage which is second in rank, and which plaintiffs ask to have canceled from the records.

December 20, 1913, Richards executed a mortgage in favor of Hutchinson & Son, plaintiffs, in the sum of $1,200, for supplies furnished by said plaintiffs. That mortgage is the third in rank which bears on the property.

In September, 1914, the Riggs Company, having acquired the vendor's lien note of $2,700, foreclosed upon the mill property, and caused it to be seized and advertised for sale to satisfy the balance due on said vendor's note of $284, with interest and attorney's fees. It has been seen that the balance of $284 is admitted to be due on said note and mortgage, or vendor's lien, and further consideration thereof passes out of the case. The writ under executory process was properly issued for said balance.

Plaintiffs allege in their petition, with reference to the note and mortgage of $10,000 held by the defendant, and bearing upon the property of Richards, that it had been paid and extinguished as a result of the operations under the lumber contract entered into between Richards and defendant.

The lumber contract, of date October 21, 1912, between Richards and defendant, was for one year, and for such extension as might be agreed upon; and it was therein stipulated that the Riggs Company was to buy the full output of the mill at prices fixed therein for different grades.

[2] Plaintiffs objected to evidence going to show that this note and mortgage for $10,000 were collateral security. But the evidence was properly admitted, over the objection. Civil Code, art. 1900; Pickersgill v. Brown, 7 La. Ann. 297; D'Meza v. Generes, 22 La. Ann. 285; Morris v. Cain, 39 La. Ann. 712, 1 South. 797, 2 South. 418; Sere v. Darby, 118 La. 619, 43 South. 255.

In support of the allegation of the payment of the said $10,000 note by Richards, plaintiffs offered in evidence a statement of account, made by defendant between itself and H. J. Richards, of date May 31, 1914, showing that Richards owed the Riggs Company $37,822.70; also an estimate of lumber on the yards of Richards, of date June 5, 1914, about the time Richards ceased to operate his sawmill, aggregating 2,060,765 feet of lumber, valued at $38,540.36, which lumber was to be loaded out by Richards; and a written acknowledgment of sale of said lumber by Richards to defendant, of date June 5, 1914.

Plaintiffs then argue that the account between Richards and defendant has been fully settled, leaving a balance due Richards; and it demands the cancellation of the $10,000 note and mortgage given by Richards to the Riggs Company to secure any indebtedness which might be due by Richards to defendant.

But, while the sale of lumber just referred to was a settlement of the account between the parties thereto, up to June 5, 1914, it does not purport to be a full settlement or

statement between the parties. On the contrary, it is recited by Richards in said act of sale that "this is a supplement" to the original contract for the sale of lumber entered into between him and the Riggs Company. And it is further recited in this supplemental contract that Richards agrees and obligates himself to—

"load the same [lumber] upon the cars for the Riggs-Terrell Lumber Company whenever it is desired to ship same—all as is provided for in the contract of sale of which this is a supplement."

Reference to the original contract between the parties, of date October 21, 1912, shows that, among the stipulations therein, it was agreed that the lumber was to be graded and stacked on the yards of Richards, and shipped out by him, subject to inspection—

"at time of shipment, and under the rules of the National Hardwood Association, and to be mutual as. is customary under such contracts."

Further:

"All lumber [was to be] shipped as fast as possible, and to be moved within an average time of four months from the date piled, or such lumber as is not shipped within this time to be paid for in full, less a deduction of one dollar per thousand feet to cover the costs of loading on cars, and the two per cent. cash discount that is customary."

And again:

"All lumber stacked in yards shall lie there at the risk of party of the second part, and shall be loaded on cars at expense of the party of the first part, and as directed by representatives of the party of the second part."

And again:

"At the expiration of this contract when the last payment is due to be made, the party of the first part agrees to allow the party of the second part to hold out of said payment, sufficient amount to insure the expense of loading what lumber is shipped, the amount deducted is due and payable to the party of the first part."

So that, when, in the subsequent agreement between the parties, of date June 5, 1914, wherein Richards agreed and obligated himself "to load the same [lumber] upon the cars for the Riggs-Terrell Lumber Company whenever it is desired to ship same—all as

is provided for in the contract of sale of which this is a supplement," it is clear that the 2,060,765 feet of lumber mentioned in said act of sale was to be loaded on the cars by Richards at the agreed price of $1 per thousand feet, which would amount to more than $2,000 alone. Besides, the lumber was subject to inspection; and the evidence for defendant is to the effect that if the lumber then bought was shipped out on the estimate made at that time, Richards would owe a balance of about $6,000. It also appears from the evidence that Richards sawed some logs for defendant after the date of the settlement between them. As the note and mortgage for $10,000 were issued by Richards to defendant as collateral security for the balance found to be due by him under the lumber contract between the parties, they, the note and inscription of the mortgage, cannot be ordered canceled until this balance has been liquidated.

Plaintiffs argue, further, that in the original contract between Richards and the Riggs Company, it was agreed that all lumber was to be shipped as fast as possible, and to be moved within an average time of four months from the date piled, "or such lumber as is not shipped within this time to be paid for in full," and that Richards was entitled to payment in full for all the lumber which passed to defendant on June 5, 1914. But they leave out of consideration that portion of the paragraph heretofore quoted, to the effect—

"less a deduction of one dollar per thousand feet to cover the costs of loading on cars," etc.

And they do not refer to those provisions which say that credits shall be given only as the lumber was shipped out, and upon the grading at that time. And they ask the court to decide that, as the lumber was not moved within the time stipulated, the money was due therefor, and should have been credited on Richards' account. All the terms of the contract must be construed together; and

they show that the settlement of June 5, 1914, was a part of the prior contract and not a full settlement between the parties.

In addition to the reasons heretofore given for not holding that the account of June 5, 1914, was not a final and full settlement between the parties, we may add that Richards is not a party to this suit; and the court cannot pass upon the condition of the account between him and the Riggs Company in his absence.

The evidence is sufficient to show that the account between Richards and the Riggs Company has not been stated or settled; and, as the $10,000 note and mortgage were given as collateral security for any balance that might be due to the Riggs Company under said contract, that mortgage, securing the $10,000 note, cannot be ordered canceled and erased from the records of the mortgage office.

Defendant has asked for damages arising from the unlawful issuance of the injunction herein; but the case was tried on the merits, and there are no means to fix a fee for dissolving the injunction.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed, and that there now be judgment in favor of defendant the Riggs-Terrell Lumber Company, and against plaintiffs, Alexander Hutchinson & Son, dissolving the injunction herein issued, and dismissing this suit at their cost in both courts.