(90 South. 528)

No. 24198.

**GONSOULIN et al. v. SPARROW.**

In re SPARROW et al.

(Nov. 28, 1921. Rehearing Denied Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. Vendor and purchaser ⊙═►232(5, 6)—Sales; that purchaser knew that third person was in possession when he bought not sufficient to charge bad faith.

The fact that the purchasers of real estate knew that the prior owner occupied the property when they bought was not sufficient to prove that they acted in bad faith in purchasing.

2. Vendor and purchaser ⊙═►239(9)—Sales; purchaser from owner of record declared owner as against one in possession claiming deed executed by him was to have been a mortgage.

In view of Civ. Code, art. 1881, declaring that engagements made through error, fraud, etc., are not absolutely null but voidable by the parties who have contracted under such influence, these defects, by reason of their latent character, are not permitted to affect injuriously third persons who have acted in good faith, and a purchaser of real estate from the owner of record is entitled to be recognized as the owner as against one in possession claiming that the deed was signed in error, that he failed to read it or have it read to him, as things outside the deed cannot be pleaded against such purchaser.

3. Vendor and purchaser ⊙═►231(1)—Sales; innocent party, relying on public records, protected thereby.

Innocent third parties, who deal on the faith of the public records, are protected thereby.

4. Vendor and purchaser ⊙═►228(5, 6)—Sales; knowledge of want of right of record owner to sell not such fraud as defeats everything.

The mere knowledge of the want of right on the part of the record owner to sell does not constitute such fraud as cuts down everything.

O'Niell, Dawkins, and Baker, JJ., dissenting.

Suit by Antoine Gonsoulin and another against Stephen Sparrow, in which Hypolite Sparrow filed an intervention. From judgment by the Court of Appeals affirming judgment for plaintiffs, defendants apply for writs of certiorari and review to the Court of Appeals. Affirmed.

Burke & Smith, of New Iberia, for relators.

E. S. Broussard, of New Iberia, for respondents.

LAND, J. The plaintiff, Antoine Gonsoulin, and Sidney L. Broussard have instituted this suit against the defendant, Stephen

Sparrow, to be recognized as the true and lawful owners of 20 arpents of land situated in the parish of Iberia.

Plaintiffs acquired 15 arpents of this land from Mrs. Vida Martin, wife of Dr. D. C. Labbe, and sole heir of James F. Martin, deceased, on July 18, 1917, for the consideration of $400, and the remaining 5 arpents on January 26, 1918, for the consideration of $60, but as the tract of land is described in the deed, "as the same land acquired by present vendor from Euzebe Gonsoulin," the description of the property conveyed as being "70 arpents" is evidently an error, as the deed from Euzebe Gonsoulin to Hypolite Sparrow described the property therein conveyed as having "20 superficial arpents."

In the intervention filed by him, Hypolite Sparrow avers that during 1897 he was indebted to George Fisk in the sum of $60, and, being without the means of securing the amount otherwise, he applied to Mr. James F. Martin for an advance of the amount, which the latter agreed to so advance, and that for the purpose of securing this advance it was agreed that the intervener should execute an act of mortgage on all his land, which was described in the deed as being 70 arpents, and that he signed what he believed to be an act of mortgage, "and which is now produced as being a cash sale of his 70-acre tract of land for the price of $60"; that he is a colored man, unable to read and write; that he placed implicit and absolute reliance upon those who conducted the negotiations, and that at no time did he believe or understand that he had executed an act of sale as against the intended act of mortgage.

Intervener alleges that he liquidated his obligation to Mr. James F. Martin, and continued to remain in possession of this property, peaceably and undisturbed, paying taxes on same, and since the death of his wife the same had been managed by defendant, his son, under intervener's claim as owner and usufructuary; the property in question belonging to the community.

Intervener alleges that the $60, which appears to be the consideration for the alleged sale, is so vile a price in comparison with the real value of the property, which was worth at least from $750 to $1,000, that it cannot be considered as a consideration necessary to the consummation of a sale, and that, if intervener executed any such deed, it was done through ignorance of fact.

Intervener further avers that the petitioners were put on notice by the very declaration of the deed; that it was not a sale because of the absolute want of consideration, and that the notice was accentuated by the fact that the petitioners knew the value of the said lands, and must have known that $60 was a vile price, and could not be the basis for a sale; and, further, that they knew that intervener and his family were in possession of the land during these many years.

[1] Both plaintiffs testified that they knew that Sparrow occupied the property when they bought, but this is not sufficient to prove that they acted in bad faith in purchasing this property. Soniat v. Whitmer, 141 La. 239, 74 South. 916; McDuffie v. Wahler, 125 La. 152, 51 South. 100: Whether $60 was a vile price for this property in 1897 is not shown by the record.

[2] Article 1881 of the Civil Code declares that engagements made through error, violence, fraud, or menace are not absolutely null, but are voidable by the parties who have contracted under the influence of such error, fraud, violence, menace, or by representations of such parties. These defects, by reason of their latent character, are not, as a general rule, permitted to injuriously affect third parties who have acted in good faith. Colgin v. Courrege, 106 La. 690, 31 South. 144; Fletcher v. Peck, 6 Cranch, 133, 3 L. Ed. 162.

Good faith is presumed, and we find noth-

ing in the record to impugn the good faith of the plaintiffs. It is not proven that they knew that $60 was a vile price for this property in 1897.

One who has signed a deed transferring an immovable cannot set up against a third party, who has acquired on the faith of the records, title, that he signed the deed in error, that he failed to read the act of transfer, or have it read to him, as things outside of the deed cannot be pleaded against such third persons. Vanzant v. Bodcaw Lbr. Co., 128 La. 924, 55 South. 577; Jolivet v. Chaves et al., 125 La. 923, 52 South. 99, 32 L. R. A. (N. S.) 1046; Vital v. Andrus, 121 La. 221, 46 South. 217.

[3] That innocent third parties who deal on the faith of the public records are protected thereby is a question no longer open to discussion, as it is the settled jurisprudence of this state.

The judgment of the Court of Appeals is therefore affirmed.

DAWKINS and BAKER, JJ., dissent.

PROVOSTY, J. (concurring). By the decision in McDuffie v. Walker, 125 La. 152, 51 South. 100, this court settled the at one time vexed question as to whether a third person can acquire a good title from the owner of record even though knowing this owner not to be the true owner. That view has since been repeatedly reaffirmed. Graham v. Murphy, 126 La. 210, 52 South. 277; John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 866, 53 South. 22; Riggs Cypress Co. v. Albert Hanson Lumber Co., 127 La. 455, 53 South. 700; Riggs v. Eicholz, 127 La. 750, 53 South. 977; Sorrel v. Hardy, 127 La. 847, 54 South. 122; Washington v. Filer, 127 La. 871, 54 South. 128; Grant Timber Co. v. Gray, 129 La. 758, 56 South. 663; Bender v. Chew, 129 La. 857, 56 South. 1023; Breaux v. Royer, 129 La. 899, 57 South. 164, 38 L. R. A. (N. S.) 982; Webster Sand, Gravel & Construction Co. v. Vicks-

burg S. & P. Ry. Co., 129 La. 1100, 57 South. 529; Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 661, 58 South. 500, Ann. Cas. 1913C, 1358; Lewis v. Manson, 132 La. 817, 61 South. 835; Tensas Delta Land Co. v. Fleischer, 132 La. 1035, 62 South. 129; Louisiana Land & Pecan Co. v. Gulf Lumber Co., 134 La. 787, 64 South. 713; Parent v. First Nat. Bank, 135 La. 262, 65 South. 233; McQueen v. Flasdick-Black Land & Lumber Co., 135 La. 708, 65 South. 900; Hutchinson & Son v. Riggs-Terrell Lumber Co., 138 La. 360, 70 South. 324; Mouton v. Southern Saw Mill Co., 138 La. 818, 70 South. 813; Bell v. Saunders, 139 La. 1049, 72 South. 727; Soniat v. Whitmer. 141 La. 239, 74 South. 916.

[4] In other words, that mere knowledge of the want of right on the part of the record owner to sell does not constitute fraud such as cuts down everything. In the present case there is neither allegation nor proof of even actual knowledge, but only a contention that the circumstances were of a nature to put plaintiff upon inquiry.

O'NIELL, J. (dissenting). This is a petitory action, in which plaintiffs, Antoine Gonsoulin and Sidney L. Broussard, claim 20 arpents of land occupied by Stephen Sparrow. Before answering the suit, he disclosed that he possessed the property, not as sole owner, but as the owner of an eighteenth interest in it, and as the tenant or lessee of his co-owners. He averred that his father, Hypolite Sparrow, owned a half interest in the property and had the usufruct of the other half interest; and that his, defendant's, eight brothers and sisters, whom he named, each owned an undivided eighteenth interest in the property. Defendant's pleading in that respect was in accord with article 43 of the Code of Practice, which declares that, if a lessee be sued in a petitory action, he must disclose to the plaintiff the name and residence of his lessor, who shall be made a par-

ty to the suit. In this case, plaintiffs did not make the defendant's co-proprietors parties to the suit, as they might have done; but the father, Hypolite Sparrow, intervened and joined his son, Stephen, in defense of the suit. Judgment was rendered in favor of the plaintiffs and against the defendant and intervener in the district court, and on appeal the judgment was affirmed by the Court of Appeal. The case is before us on a writ of certiorari and review issued at the instance of the defendant and intervener.

The short question propounded is whether the rule excluding verbal evidence of title to real estate should deprive the court of its power to prevent a hardship in a case where a person, not in good faith, buys the property from one whom the public records declare to be the owner.

Hypolite Sparrow, who is an illiterate old colored man, bought the land in contest from Euzebe Gonsoulin, for $200, on the 22d of June, 1878, and built his humble home upon it, at the cost of $180. On the 30th of August, 1897, Sparrow and two other men bought jointly, from Robert Martin and J. B. Levert, a tract of land containing 81.70 arpents, at the price of $1,717.40, of which latter tract it appears that Sparrow acquired or went into possession of 50 arpents. The record does not show how Sparrow acquired from his associates a title to the 50 arpents. He and his wife and children resided upon the tract of 20 arpents and cultivated the land, raising crops of sugar cane, annually, and paying the taxes regularly, during a period of 38 years preceding the institution of this suit. The cane crops were sold annually to J. F. Martin, who owned a sugar factory in the neighborhood. In 1897, Sparrow owed George Fisk a small sum of money, and the latter seized Sparrow's crop of sugar cane for the debt. Sparrow called upon J. F. Martin for a loan sufficient to pay the debt. The amount required was only $60. J. F.

Martin made the loan of $60, and Sparrow's debt was thereby paid and the seizure released. Sparrow's understanding of the agreement was that he should sign a contract to sell and deliver the crop of sugar cane to Martin, and that the latter should deduct the $60 from the proceeds. However, the notary public, or justice of the peace, who wrote the instrument, to which Sparrow affixed a cross mark in lieu of a signature, made a deed purporting to convey Sparrow's 70 arpents of land to Martin for the cash price of $60. The deed was made on the 6th of December, 1897, and was recorded in the current conveyance record. Although the land is described in the deed as containing 70 arpents, more or less, it is also described as being the same which Sparrow had bought from Euzebe Gonsoulin, which tract, in fact, contains only 20 arpents, and is the land now in contest. It is not possible to determine from the instrument itself whether the notary intended to include in the deed all of Sparrow's 70 arpents of land or only the 20 arpents which he had bought from Euzebe Gonsoulin. That is a matter of no importance, however, because the 20 arpents of land, with the improvements on it, was worth at least 6 times, and more likely 10 times, the $60. Sparrow delivered his crop of sugar cane to J. F. Martin and with the proceeds paid his debt of $60 in full.

All of the land acquired by Sparrow belonged to the marital community between him and his wife. She died, some time after the year 1897, leaving the nine children, who inherited her half interest in the property. J. F. Martin continued residing in the neighborhood for several years after his transaction with Sparrow, and died in 1907, in a foreign country, leaving as his sole heir his daughter, Mrs. Labbe, who resided in the parish adjoining that in which is situated the land in contest.

On the 18th of July, 1917, the plaintiffs in

this suit bought from Mrs. Labbe for $200 15 of the 20 arpents of land which Sparrow had bought from Gonsoulin; and, on the 26th of January, 1918, plaintiffs bought from Mrs. Labbe the remaining 5 arpents of the land which Sparrow had bought from Gonsoulin. In each of the deeds by which plaintiffs bought from Mrs. Labbe, they recognized that the land was that for which J. F. Martin had paid only $60; for each deed contains a reference to the deed by which J. F. Martin bought from Sparrow, mentioning the date of the deed, the number of the conveyance record, and the page of the book, in which the deed was recorded. Both of the plaintiffs lived in the neighborhood of the land in contest and had lived there continuously from a date prior to the year 1897. They both admitted in their testimony in this suit that they were aware, when they bought from Mrs. Labbe, that Hypolite Sparrow and his family had remained in possession of the property and had continued to cultivate the land, and that J. F. Martin had never taken possession or exercised any act of ownership of the property. When asked, on cross-examination, what the property was worth in 1897, plaintiffs referred to the deeds by which Sparrow had bought the property, as evidence of its value. Defendant's counsel thereupon introduced the deeds for the sole purpose of showing what the property was worth in 1897, and no objection was made to the evidence. Defendant's counsel also proved by Hypolite Sparrow the enhanced value of the property as a result of the improvements which he had made. He also proved by the testimony of the husband of Mrs. Labbe that she had never taken possession or exercised any act of ownership of the property, and that she did not even know that the records disclosed a title in the name of her father, until a few days before she sold the land to the plaintiffs in this suit. We assume that the plaintiffs discovered the deed, by which Mrs. Labbe's father is supposed to have acquired title to the property for $60, and that they informed Mrs. Labbe of the discovery.

Although both of the plaintiffs were put on cross-examination by defendant's counsel, under Act No. 126 of 1908 (p. 185), and had ample opportunity to assert their good faith in buying the property from Mrs. Labbe, or their belief that the transaction between Hypolite Sparrow and J. F. Martin was a genuine sale, they did not assert any such good faith or belief. On the contrary, they virtually admitted that they could not possibly have been in good faith or under the belief that the transaction between Hypolite Sparrow and J. F. Martin was a genuine sale. Having admitted that they knew that Hypolite Sparrow and his family had remained in possession of the property for 38 years, plaintiffs' failure to make any assertion of having had faith in Sparrow's transaction with J. F. Martin was a tacit admission that they knew that the transaction was not a genuine sale.

Plaintiffs rested their case entirely upon the written deeds, and upon their objection to the admissibility of verbal testimony, under the circumstances of the case. The district court admitted the testimony, holding that the objection went to the effect of the evidence. Our opinion is that, under the allegation and proof that Hypolite Sparrow was an illiterate man, unable to read or write, and without sufficient intelligence to distinguish between an act of sale and a security transaction, if either were read to him, and under the allegation and proof that the price mentioned in the pretended act of sale could not possibly have been a fair price, and under the allegation and proof that Hypolite Sparrow and his family had remained in possession of the property continuously for 22 years after the pretended sale, and upon plaintiffs' failure to assert that they

were in good faith or under the belief that Mrs. Labbe was the real owner of the property, verbal testimony was admissible to show the real cause or consideration for which the pretended sale was made by Hypolite Sparrow to J. F. Martin. Sparrow's continued possession of the property was an evidence of his ownership. If the plaintiffs in this case had been creditors of Sparrow, they might successfully have seized the property in his possession. Our conclusion is that they were not misled by the record, because they could not reasonably have believed that the instrument purporting to transfer the property to J. F. Martin for only $60 was a bona fide or genuine sale.

The three decisions cited by the Court of Appeal would not be authority for a ruling excluding the verbal testimony in this case; viz: Vital v. Andrus, 121 La. 221, 46 South. 217; Jolivet v. Chaves, 125 La. 923, 52 South. 99, 32 L. R. A. (N. S.) 1046; and Vanzant v. Bodcaw Lumber Co., 128 La. 923, 55 South. 577. In Vital v. Andrus, the ruling was that a purchaser in good faith from the owner of record was protected against an action en declaration de simulation, brought by the forced heir of the vendor of such owner of record. The decision was based entirely upon the conclusion that the defendant had relied upon the public record, in perfect good faith, in purchasing the property from the owner of record. In Jolivet v. Chaves, the ruling was that the vendor in an act of sale with right of redemption could not recover the property from a third person, who had bought in good faith from the vendee after the right of redemption had expired, by verbal testimony that the act of sale with right of redemption was intended to be an act of mortgage. In Vanzant v. Bodcaw Lumber Co., also, the third party who had purchased the land from the owner of record was in good faith, and the ruling rested upon that fact. The court did not exclude the verbal testimony in that case, but said: "The testimony is before us and will be considered." And the court did consider and review the testimony and pass judgment upon its sufficiency and effect.

The two decisions cited by counsel for plaintiffs, Colgin v. Courrege, 106 La. 684, 31 South. 144, and Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162, are consistent with the opinion which I have expressed. The ruling in Colgin v. Courrege rested upon the fact that the third party who had purchased from the owner of record had acted in good faith. The decision in Fletcher v. Peck is not at all appropriate. The expression quoted from page 133 of the report does not appear to have been the basis of the decision, and if it were a part of the decision it would yet be consistent with the opinion which I have expressed in this case.

For these reasons, I respectfully dissent.